**Curtis SIMS, Plaintiff,**

v.

**ALAMEDA–CONTRA COSTA TRANSIT DISTRICT, et al., Defendants.**

No. C–96–2244 CAL.

United States District Court,
N.D. California.

April 9, 1998.

1254

Indira Talwani, Altshuler, Berzon, Nuss-
baum, Berzon & Rubin, San Francisco, CA,
for Plaintiff.

Paul M. Sluis, Alameda–Contra Costa
Transit, Office of General Counsel, Oakland,
CA, for Defendants.

## OPINION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

LEGGE, District Judge.

### I. INTRODUCTION

Under the Family Medical Leave Act ("FMLA" or "the Act"), 29 U.S.C. § 2601 et seq., an eligible employee with a "serious health condition" is entitled to up to twelve weeks of medical leave. 29 U.S.C. § 2612(a)(1)(D). An employer may require an employee seeking medical leave to provide certification that he has a serious health condition. If an employer has reason to doubt the validity of the medical certification presented by the employee in support of his request for medical leave, the employer "may" require the employee to obtain a second opinion. 29 U.S.C. § 2613(c). If the second medical opinion differs from the first medical opinion, the employer "may" require the employee to obtain a third medical opinion. 29 U.S.C. § 2613(d)(1). The third medical opinion "shall" be binding. 29 U.S.C. § 2613(d)(2).

These cross-motions concern the employer's right to challenge the employee's initial medical certification in a later civil action under the Act, where it failed to exercise its option of requiring the employee to obtain second and third medical opinions. Specifically, the issue is whether defendant, who denied plaintiff's request for leave without utilizing the second and third medical opinion procedures set out in section 2613, may in this action challenge the validity of the medical certification submitted by plaintiff in support of his request for medical leave.

In summary, the court holds that where the employer did not seek a subsequent medical opinion within a reasonable time period after the employee submitted his initial certification of a serious health condition, the employer may not now challenge here the validity of the initial medical certification submitted by the employee. In addition, where the employee's initial certification was sufficient under the Act to establish that he had a serious health condition, the employer may not deny leave based on a minor deficiency in the certification if it did not meet its obligation under the Act to notify the employee of the perceived deficiency and provide him a reasonable opportunity to cure it.

### II. FACTS

Plaintiff Curtis Sims was a bus driver for defendant Alameda–Contra Costa Transit District ("AC Transit") for twenty-five years. He did not report to work from April 18, 1994 through May 3, 1994. Under AC Transit's attendance policy, an unexcused period of absence constitutes an "occurrence." An employee may receive a five day suspension for his ninth occurrence, and may be terminated for his tenth occurrence, in a rolling one-year period.

Sims alleges that in April 1994 he was suffering from a back injury which caused him severe back pain and caused him to limp. He alleges that he spoke with an AC Transit manager about his injury and his need to take time off to take care of it. AC Transit concedes that before Sims' absence of April 18–May 3, 1994, some management personnel at AC Transit, including plaintiff's immediate supervisor, were aware that plaintiff had a back problem.

On April 16, 1994, a day on which Sims was not scheduled to work, Sims visited a physician at a Kaiser Hospital. The doctor recommended that he take time off from work, and prescribed treatment including prescription medication and physical therapy. The physician gave Sims a Kaiser Visit Verification Form stating that Sims would be unable to work from April 16 through April 25, 1994. Sims was not scheduled to work on April 17.

Sims contends that on April 18, 1994, he woke up unable to move because of back pain. He called into work and told the dispatcher that he needed to be "put on the sick book." AC Transit alleges that the same day it issued a "Come See Me" notice to Sims. Such notices require the employee to see his supervisor, and are routinely issued by AC Transit management when an employee incurs an absence which may result in discipline. Sims did not respond to the notice, and alleges that he never received it.

Sims visited Kaiser Hospital again on April 26, 1994 and saw a different doctor. He received another Visit Verification Form, this time stating that he would be unable to work during the period April 26—May 1, 1994. Sims then saw a chiropractor on April 29 and May 2, 1994, who provided Sims with a "return to work order" stating that Sims would be able to return to work on a trial basis on May 4, 1994. Sims was not X-rayed in connection with his back problem during this period.

AC Transit concedes that during Sims' absence, he went into the bus yard on at least three occasions and signed the "sick book." Sims returned to work on May 4, 1994. Upon his return, he provided his three medical slips to AC Transit. That same day he received a letter from AC Transit dated April 26, 1994, informing him that management had classified his absence as his ninth occurrence in twelve months, and intended to suspend him for five days. Sims appealed the proposed suspension, but it was sustained after a first-level disciplinary hearing on May 16, 1994. He served a 5-day suspension without pay.

Sims was again ill and absent from work on July 11 and 12, 1994. On July 19, 1994, AC Transit notified Sims that it intended to terminate him under its attendance policy because it considered his July 11–12 absence to be his tenth occurrence in twelve months. Apparently Sims also challenged that decision, but the decision was upheld by an expedited arbitration panel on August 17, 1995.

Sims filed a complaint with the Department of Labor on November 30, 1995. He filed a complaint with the California Department of Fair Employment and Housing ("DFEH") on March 26, 1996. On June 11, 1996 the DFEH issued Sims a right-to-sue letter.

### III. THIS ACTION

Sims filed this action alleging that AC Transit interfered with his rights under FMLA and the California Family Rights Act ("CFRA") by failing to provide him with notice of his rights and obligations under

FMLA, and by terminating him based in part on an absence which was due to a serious health condition. He contends that his April 18–May 3, 1994 absence was due to a "serious health condition," and that it was therefore protected medical leave under FMLA and CFRA. As protected leave, he argues, the April 18–May 3, 1994 absence should not have counted as an unexcused absence or an "occurrence" under AC Transit's attendance policy. His tenth "occurrence" in July 1994 was therefore only his ninth, he argues, and was insufficient to support his termination under AC Transit's attendance policy.

The motions now before the court are Sims' motion for partial summary adjudication and AC Transit's cross-motion for summary judgment. AC Transit argues that as a matter of law Sims did not suffer from a "serious health condition" within the meaning of the FMLA and is therefore not entitled to the Act's protections. Sims contends that AC Transit waived its right to argue in this action that he did not have a serious health condition, because (1) he submitted medical certification which established that he did have such a condition, (2) AC Transit failed to obtain additional medical opinions pursuant to the certification procedures of 29 U.S.C. § 2613, and (3) AC Transit did not inform him that the certification he submitted was in any way inadequate.

### IV. THE FAMILY MEDICAL LEAVE ACT

#### A. Scope of Coverage

Congress enacted the Family Medical Leave Act of 1993 in part "to entitle employees to take reasonable leave for medical purposes." 29 U.S.C. § 2601(b)(2). FMLA entitles eligible employees to a total of twelve workweeks of leave during any twelve-month period due to, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.112(a)(4).[1] Employees who take leave pursuant to the

---

1. It is undisputed that AC Transit is a covered employer and that Sims was a covered employee

under the Act. *See generally,* 29 U.S.C. § 2611.

Act are entitled to return to the same or equivalent positions as they had prior to the leave. 29 U.S.C. § 2614(a)(1).

The Act defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves— (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A) & (B). The Department of Labor's interim regulations define "continuing treatment by a health care provider." [2] *Continuing treatment* by a health care provider" means, in relevant part, that "[t]he employee or family member in question is treated two or more times for the injury or illness by a health care provider." 29 C.F.R. § 825.114(b)(1).

The Act defines "health care provider" as "(A) a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or (B) any other person determined by the Secretary to be capable of providing health care services." 29 U.S.C. § 2611(6). *See also* 29 C.F.R. § 825.118(a)(1)-(2). The Secretary of Labor has defined others "capable of providing health care services" to include "Podiatrists, dentists, clinical psychologists, optometrists, and *chiropractors (limited to treatment consisting of manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist.) ....*" 29 C.F.R. § 825.118(b)(1) (emphasis added).

A serious health condition involving continuing treatment by a health care provider must also involve a "period of incapacity requiring absence from work ... of more than three calendar days." 29 C.F.R. § 825.114(a)(2).

## B. Certification Requirements

An employer may require that the employee's request for leave "be supported by a certification issued by the health care provider of the employee." 29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(a). "An employer must give written notice of a requirement for medical certification ... in a particular case." 29 C.F.R. § 825.305(a). "In most cases, the employer should request that an employee furnish certification from a health care provider at the time the employee requests leave or soon after the leave is requested." 29 C.F.R. § 825.305(b). "At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 C.F.R. § 825.305(c).

An employee's medical certification "shall be sufficient" if it states—

(1) the date on which the serious health condition commenced;

(2) the probable duration of the condition;

(3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;

(4) (A) ...

(B) ... a statement that the employee is unable to perform the functions of the position of the employee;

29 U.S.C. § 2613(b). Importantly, "[t]he employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(c).

The Act sets out the following certification procedure an employer may utilize if it ques-

---

**2.** The parties dispute which set of the Department of Labor's regulations apply here. The Department's interim regulations took effect August 5, 1993, and the final regulations took effect February 6, 1995. *Victorelli v. Shadyside Hospital,* 128 F.3d 184, 186 (3rd Cir.1997). Sims argues that the final regulations apply because they were in effect on August 17, 1995, the date on which he was terminated. AC Transit argues that the interim regulations apply because they were in effect at the time of Sims' absence of April 18–May 3, 1994. The court concludes that the interim regulations apply. Although the final decision to terminate Sims did not occur until

August 17, 1995, the course of events surrounding the April 18, 1994 absence, including AC Transit's decision to treat the absence as an "occurrence" under its attendance policy, took place before the final regulations took effect. *See Id.; Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 761 n. 2 (5th Cir.1995). However, where necessary, the court will refer to the final regulations as an aid to interpret the interim regulations. *Id.*

All references to the DOL regulations in this Order are to the interim regulations unless otherwise noted.

tions the validity of the medical certification submitted by the employee:

(c) Second Opinion

(1) In General

In any case in which the employer has reason to doubt the validity of the certification provided ... the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) of this section for such leave.

(2) Limitation

A health care provider designated or approved under paragraph (1) shall not be employed on a regular basis by the employer.

(d) Resolution of conflicting opinions

(1) In general

In any case in which the second opinion described in subsection (C) of this section differs from the opinion in the original certification provided under subsection (a) of this section, the employer may require, at the expense of the employer, that the employee obtain the opinion of a third health care provider designated or approved jointly by the employer and the employee concerning the information certified under subsection (b) of this section.

(2) Finality

The opinion of the third health care provider concerning the information certified under subsection (b) of this section shall be considered to be final and shall be binding on the employer and the employee.

29 U.S.C. § 2613. The interim regulations explain this procedure as follows:

(a) If an employee submits a complete certification signed by the health care provider, the employer may not request additional information from the employee's health care provider. Rather, an employer who has reason to doubt the validity of a medical certification may require the employee to obtain a second opinion at the employ-

er's expense. The employer is permitted to designate the health care provider to furnish the second opinion, but the selected health care provider cannot be employed on a regular basis by the employer.

(b) ....

(c) If the opinions of the employee's and the employer's designated health care providers differ, the employer may require the employee to obtain certification from a third health care provider, again at the employer's expense. This third opinion shall be final and binding. The third health care provider be must [sic] designated or approved jointly by the employer and the employee. The employer and the employee must each act in good faith to attempt to reach agreement on whom to select for the third opinion provider. If the employer does not attempt in good faith to reach agreement, the employer will be bound by the first certification. If the employee does not attempt in good faith to reach agreement, the employee will be bound by the second certification. For example, an employee who refuses to agree to see a doctor in the specialty in question may be failing to act in good faith. On the other hand, an employer that refuses to agree to any doctor on a list of specialists in the appropriate field provided by the employee and whom the employee has not previously consulted may be failing to act in good faith.

29 C.F.R. § 825.307.

## C. Employee's Notice Requirements

FMLA requires an employee to furnish notice to his employer when he requires FMLA leave. When the need for leave is foreseeable, employees must furnish notice at least thirty days in advance. 29 U.S.C. § 2612(e)(1); 29 C.F.R. § 825.302. Where, as in this case, the need for leave is unforeseeable, "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Moreover,

[i]f leave is taken for an FMLA reason but the employer was not aware of the reason, and the employee desires that the leave be

counted as FMLA leave, the employee must notify the employer within two business days of returning to work of the reason for the leave.

29 C.F.R. § 825.208(e)(1). "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). However, "[t]he employee need not expressly assert rights under FMLA or even mention FMLA, but may only state that leave is needed . . . ." for a medical reason, for example. *Id.; see also Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762–63 (5th Cir.1995).

If the employer does not have sufficient information about the reason for an employee's use of paid leave, the employer should inquire further to ascertain whether the paid leave is potentially FMLA-qualifying. 29 C.F.R. § 825.208(a)(2).

> The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave.

29 C.F.R. § 825.302(c). "The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b).

### D. Employers' Notice Requirements

Employers are required to provide employees with various information about their rights and obligations under FMLA. First, employers are required to post . . . a notice explaining the Act's provisions . . . . 29 C.F.R. § 825.300(a). "[A]n employer that fails to post the required notice cannot take any adverse action against an employee, including denying FMLA leave, for failing to

furnish the employer with advance notice of a need to take FMLA leave." 29 C.F.R. § 825.300(b).[3]

Second, if an employer "has any written guidance to employees concerning employee benefits or leave rights, such as in an employee handbook, information concerning FMLA entitlements and employee obligations under FMLA must be included in the handbook or other document." 29 C.F.R. § 825.301(a)(1). If an employer does not have written policies, manuals etc., "[t]he employer shall provide written guidance to an employee concerning all the employee's rights and obligations under the FMLA whenever an employee requests leave under the FMLA." 29 C.F.R. § 825.301(b).[4]

Significantly, in all cases,

> when an employee provides notice of the need for FMLA leave, the employer shall provide the employee with notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. Such specific notice should include . . .[a]ny requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so.

29 C.F.R. § 825.301(c). If an employer fails to provide this information where required, "the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice." 29 C.F.R. § 825.301(f) (final regulations).

The regulations require an employer to give *written* notice of a requirement for medical certification in a particular case. 29 C.F.R. § 825.305(a). Moreover, "[t]he employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(c).

---

**3.** The parties dispute whether AC Transit posted the notice required by 29 C.F.R. § 825.300(a), but the Court concludes that the resolution of this factual dispute is not material to the outcome of these cross-motions.

**4.** The parties dispute whether AC Transit provided its employees with written guidance in any form concerning entitlements and employee obligations under FMLA as required by 29 C.F.R. §§ 825.301(a) & (b), but the Court concludes that the resolution of this factual dispute is not material to the outcome of these cross-motions.

## V. ANALYSIS

### A. Failure to Employ Second and Third Opinion Procedures of Section 2613

No federal court has squarely confronted the question of statutory interpretation raised by this case: whether an employer who denied an employee's request for leave without employing the second and third medical opinion procedures set out in section 2613, may later challenge in a civil action under the Act the accuracy of the medical certification submitted by the employee in support of his request for medical leave.

The language of the Act expressly provides that if the employer has reason to doubt the validity of the employee's initial certification, the employer "may" require the employee to obtain a second and possible third medical opinion. *See* 29 U.S.C. § 2613. The issue presented here is what, if any, are the consequences to the employer who opts *not* to seek a second and possibly third medical opinion.

Under AC Transit's interpretation of the Act, there are no consequences at all. If the employer doubts the validity of an employee's certification, it may simply discipline the employee for an unexcused absence without requiring the employee to obtain the opinion of a second doctor. The employee's only recourse, under that interpretation, is to sue the employer under the FMLA and let a court determine whether the employee had a serious health condition at the time of his absence. During such litigation, AC Transit contends, the employee's entire employment and medical history is subject to discovery, and the employer may rely on expert witnesses hired solely for the purposes of litigation. Under this interpretation, the FMLA procedures permitting an employer to obtain second and third medical opinions provide an *optional* dispute resolution mechanism which an employer may chose not to utilize with no consequence to its right to later litigate whether the employee had a "serious health condition."

Sims, on the other hand, contends that the certification procedures of section 2613 are the *only* way an employer may contest the veracity of an employee's initial medical certification. Sims argues that AC Transit may not now challenge the truth or accuracy of his initial medical certification because it never requested that he see a second or third doctor at the time he submitted the certification, and chose instead to simply terminate his employment. Under this interpretation of the Act, the second and third medical certification procedures are the only way an employer may challenge the veracity of an employee's initial medical certification. If an employer fails to require a second and possibly third medical opinion, it is bound to accept as true the facts stated in the initial certification. If such certification establishes on its face that the employee had a serious health condition as defined by FMLA, the employer may not rely on expert witnesses and other evidence obtained through discovery to contest that fact in court.

■ In interpreting the Act, the court first turns to the plain language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Here, the language of the statute is ambiguous. Although the language clearly states that the employer "may" obtain second and third medical opinions, it is not clear whether this is the exclusive way for an employer to contest the content of a medical certification, or whether it is merely an optional dispute resolution mechanism. Because the language of the Act is ambiguous on the issue, the court next turns to the policies underlying the Act, the legislative history of the Act, and the structure and internal logic of the Act to guide its consideration.

■ In adopting the FMLA, Congress found, *inter alia,* that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). Among the stated purposes of the Act is "to entitle employees to take reasonable leave for medical reasons," 29 U.S.C. § 2601(b)(2), and to do so "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3).

Congress designed the certification procedures of section 2613 "as a check against employee abuse of [medical] leave ...." H.R.Rep. No. 103–8(I), 103d Cong., 1st Sess. at 39 (1993); S. Rep. 103–3, 103d Cong., 1st

Sess. at 27–28 (1993). During a colloquy on the FMLA legislation before a Congressional Committee, Secretary of Labor Robert Reich explained how the Act balances employee and employer rights:

[Congressman] Green: ... As I read the bill, ... a physician or a health care provider just says that that person is ill and they don't have to actually provide a great deal of medical history for the employer. I am concerned about some of the individual rights of that employee not having to prove their whole medical history to their physician. If you could just share that with the committee and for the record. Secretary Reich: Yes. My understanding is the same, Congressman. That we want to make sure that *employees can get swift and expeditious coverage when they need it.* We don't want to make this onerous, but at the same time we want to make sure that *employers are confident that the employee really does need to take family medical time off without pay, and this was the effective balance between the two,* in terms of a doctor's letter or other information from a doctor suggesting that without getting into the details with the privacy of the employee's medical history.

"Legislative Hearing on H.R. 1, the Family and Medical Leave Act," hearings before the Subcommittee on Labor–Management Relations, House Education and Labor Committee, 103 Cong., 1st Sess. at 46 (January 26, 1993) (emphasis added).

The competing policy concerns noted by Secretary Reich suggest that Congress did not intend to allow employers who did not seek second opinions to later challenge in court the validity of the certification presented by the employee at the time he requested leave. The procedures allowing the employer to obtain second and third medical opinions are intended to protect against employee abuse by enabling the employer to ensure that the employee really needs to take time off. Thus, if the employer has reason to doubt the validity of the initial certification, the employer "may" require the employee to obtain a second opinion. However, this policy is balanced against the policy of ensuring "swift and expeditious coverage" for employees who are entitled "to take reasonable leave for medical reasons." *Id.;* 29 U.S.C. § 2601(b)(2).

To allow courts, rather than doctors, to determine the medical condition of an employee who seeks leave would upset the balance between the eligible employee's right to swift and expeditious coverage and the employer's right to ensure that the requested leave is needed. The policy of providing swift and expeditious coverage would be undermined if an employer could simply deny leave to an employee who has presented adequate certification of his need for and entitlement to medical leave. An employee in that situation would have no recourse other than to forego the leave to which he may be entitled under the Act (if he requests leave in advance), or to take leave, suffer the employer's discipline for the "unexcused" absence (which may include termination), sue his employer, and then wait for the court to decide. Time is of the essence when an employee requests medical leave. Such leave is no longer necessary or appropriate once the illness or injury passes.

On the other hand, the employer can ensure that requested leave is truly needed by requiring the employee to obtain the opinion of a second and possibly third doctor within a reasonable period of time after the initial certification is submitted. Thus, the employer's interest in obtaining an accurate health assessment to prevent employee abuse is not compromised by utilizing the certification procedures set out in section 2613.

The statutory scheme is designed to have medical determinations made by health care providers, rather than courts. *See Reich v. The Standard Register Co.,* 1997 WL 375744, *2, 1997 U.S. Dist. LEXIS 3021, *5–6 (W.D.Va.1997) ("The FMLA contemplates that decisions of whether an employee has a 'serious health condition' will be made by doctors."). In responding to comments by the U.S. Small Business Administration (SBA) on the interim regulations adopted by the DOL, the DOL explained that employers are not to make the medical judgments as to whether a particular medical condition is a serious health condition justifying leave under the Act:

SBA mistakenly presumes that this is a judgment that the statute and regulations permit an employer to make. If the health condition meets the definition in the regulations at § 825.114 and, as provided in §§ 825.305–825.307, an employee furnishes a completed DOL-prescribed medical certification from the health care provider, *the only recourse available to an employer that doubts the validity of the certification is to request a second medical opinion at the employer's expense.* Employers may not substitute their personal judgments for the test in the regulations or the medical opinions of the health care providers of employees ... to determine whether an employee is entitled to FMLA leave for a serious health condition.

60 Fed.Reg. 2180, 2235 (1995) (emphasis added).

It is not surprising that the Act requires employers to defer to the medical opinions of doctors rather than those of courts. Not only are doctors more qualified than courts to assess an individual's health condition, but use of the certification procedures is more likely to result in the employee being diagnosed at or nearer to the time of the alleged illness or injury. Expert witnesses hired later in the course of litigation, on the other hand, will be asked to form opinions and testify about health conditions which may have ended years ago.

The structure and internal logic of the Act also suggests that the certification procedures of section 2613 are the exclusive means for an employer to challenge the medical facts underlying the employee's certification. Although the regulations explicitly permit an employer to deny leave to an employee who fails to produce "a requested medical certification," 29 C.F.R. § 825.312(b), there is no explicit authority for an employer to deny leave to an employee who does produce medical certification. To the contrary, Congress stated that if an employee's medical certification meets certain requirements, it "shall be sufficient." 29 U.S.C. § 2613(b). If an employer has the choice of skipping the certification process and engaging instead in additional discovery of medical facts, the term "sufficient" is rendered meaningless.

Moreover, the Act provides that if an employer does seek a second (or third) medical opinion, "the employee is provisionally entitled to the benefits of the Act" while that process is being pursued. 29 C.F.R. § 825.307(a)(2). By specifying that the employee is to receive the benefits of the FMLA during the pendency of the second-opinion process, this provision implies that the employee's submission of a complete medical certification is sufficient to trigger FMLA protection unless and until there is contrary medical evidence. The provision suggests that the second and third medical opinion process is the exclusive verification option for an employer who has reason to doubt the validity of the employee's original certification. Moreover, the opinion of the third health care provider "shall be considered to be final and shall be binding on the employer and the employee." 29 U.S.C. § 2613(d)(2). This final and binding procedure ensures a speedy determination of an employee's need for medical leave where the employer had reason to question the validity of the initial certification.

The Act's privacy protections also suggest that Congress did not intend courts to determine whether a particular employee suffered from a serious health condition. The Act protects an employee's privacy by imposing specific limitations on the content of the certification an employer may require. The employer may require nothing more in the initial certification than (1) the date on which the serious health condition commenced, (2) the probable duration of the condition, (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition, and (4) a statement that the employee is unable to perform the functions of the position of the employee. 29 U.S.C. § 2613(b); *see also* 29 C.F.R. § 825.306. "The employer may not request additional information from the employee's health care provider." 29 C.F.R. § 825.307(a). The statute provides that "[c]ertification provided ... *shall be sufficient* if it states [the information listed above]." 29 U.S.C. § 2613(b) (emphasis added). The content of the second and third medical opinions provided to the employer under section 2613 are similarly limited. 29 U.S.C. §§ 2613(c)(1) & 2613(d)(1); 29 C.F.R. § § 825.306(a) & (b). These provisions evidence a congressional in-

tent to protect the privacy of the employee's medical history. Were the facts certified by the employee's health care provider to be litigated in the courts, much of the employee's medical history would become subject to discovery. Such discovery would defeat the purpose of these FMLA provisions which aim to prevent the invasion of privacy which can occur as a matter of workplace routine by way of informal contact with health care providers, invasive casual questioning by supervisors, and on-the-job demands for medical information.

AC Transit argues that it would have been futile for Sims to see a second doctor because he had already recovered and returned to work by the time AC Transit received his initial certification and could have required him to seek a second opinion. It contends that "further examinations of plaintiff ... would ... [have] be[en] absolutely fruitless" and "pure guesswork, because the second-opinion doctor would be precluded from obtaining any medical history, including the facts of his condition at the time of the absence, by 29 C.F.R. 825.307(a)." Defendant's Opposition Brief at 11–12. This contention is incorrect. Nothing in section 825.307(a) of the regulations or any other provision precludes the second or third *doctors* from obtaining medical history. Section 825.307(a) only prohibits *employers* from obtaining certain medical history about the employee. Thus, a second doctor could have reevaluated Sims' condition with the benefit of his medical history records. Moreover, although Sims had recovered before he could have sought a second doctor's opinion, a medical evaluation prepared a few weeks after the existence of his alleged serious health condition is likely to have been as accurate as, or more accurate than, a doctor's evaluation prepared years later for the purposes of litigation.

AC Transit argues that Congress intended the certification procedures of section 2613 to operate as an optional alternative dispute resolution mechanism, but did not intend to divest employers of the right to litigate in court the same issues the procedures could have resolved. This court disagrees. An employer would have little incentive to ever utilize the certification procedures if it would suffer no consequence for failing to do so.

Such an interpretation of the Act would effectively allow an employer to terminate an employee for taking leave even where that employee presented to his employer medical documentation that he is entitled to medical leave under FMLA. In the relatively rare event where an employee musters the resources and inclination to file a lawsuit against his (former) employer, the employer would not even be bound by the same privacy protections afforded the employee under section 2613.

In sum, when Congress provided in section 2613 that an employer "may require" second and third medical opinions, it gave the employer the option to either require the employee to obtain a second and possibly third medical opinion to verify the certification submitted by the employee, or to accept the employee's certification as an accurate assessment of the employee's health condition. Congress did not allow an employer to deny a leave request without using the statutory procedures, and then argue in court after engaging in civil discovery that the certification presented by the employee did not accurately represent the employee's medical condition.

AC Transit had the opportunity to challenge the medical certification provided by Sims by requiring him to obtain, at its expense, one or two more medical opinions. It did not do so. It is thus bound by the initial certification Sims submitted. If this initial certification sufficiently establishes that Sims had a serious health condition, AC Transit, having failed to exhaust the second and third-opinion process, is not entitled to challenge that medical finding now.

**B. Sufficiency of Sims' Initial Medical Certification**

The remaining issue is whether Sims' initial certification was sufficient to establish that he had a serious health condition under the Act. AC Transit waived its right to litigate whether Sims had a serious health condition only if Sims' initial certification was sufficient to establish that he had such a condition.

The employee has the burden of establishing that he had a serious health condition under the FMLA. *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997); *Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1164 n. 7 (N.D.Ohio 1997). Where the employer failed to obtain second and third medical opinions pursuant to section 2613, the employee can meet this burden by showing that when he requested leave he presented to his employer medical certification which established that he had a serious health condition during the time of the requested leave. To defeat the employee's motion for summary judgment the employer must present evidence sufficient to raise a genuine factual dispute as to whether the employee presented adequate certification that he had a serious health condition.

Thus, the issue before the court is not whether Sims in fact had a serious medical condition justifying leave under FMLA. Rather, the issue is whether Sims obtained and submitted to AC Transit adequate medical certification that he had such a condition. If he did, Sims is entitled to summary judgment that he suffered from a serious health condition because AC Transit failed to challenge that certification by requiring Sims to obtain a second and possibly third medical opinion.

AC Transit argues that the certification Sims presented was inadequate to establish that Sims had a serious health condition. Under the Act, certification is "sufficient it if states—(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; [and] (4) . . . a statement that the employee is unable to perform the functions of the position of the employee." 29 U.S.C. § 2613(b).

AC Transit first argues that the sick slips Sims submitted are not sufficient because they did not include the approximate date on which Sims' serious health condition commenced, or the probable duration of the condition. AC Transit contends that Sims' certification was required to disclose the approximate date Sims' back problem began and the probable duration of the problem. AC Transit misconstrues this requirement.

A "serious health condition" under the statute is one which, among other things, "makes the employee unable to perform the functions of the position." *See* 29 U.S.C. § 2612(a)(1)(D). Thus, the approximate date Sims' serious health condition commenced is not the date on which his back began to bother him; rather, it is the date on which the problem became incapacitating and required continuing treatment by a health care provider. *See* 29 U.S.C. § 2611(11). The first sick slip from Kaiser Hospital indicated that Sims' serious health condition began on April 16, 1994—the first day he was unable to work (although he was not scheduled to work until April 18, 1994). Moreover, each of the sick slips presented by Sims estimated the probable duration of his serious health condition. The first sick slip stated that Sims would be unable to work through April 25, 1994, and the second sick slip, prepared after Sims was reevaluated, stated that he would be unable to work through May 1, 1994. The note from the chiropractor stated that Sims could return to work on a trial basis on May 4, 1994. Thus, the certifications state when his serious health condition commenced and its probable duration.

AC Transit next argues that the certification shows that Sims did not have a serious health condition under the Act because he was not under continuing treatment by "a" health care provider as required by 29 U.S.C. § 2611(B). Section 2611(B) defines a "serious health condition" as "an illness, injury, impairment or physical or mental condition that involves—. . . (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(B). The regulations in turn define "Continuing treatment by a health care provider" to mean, *inter alia*, that the employee "is treated for the injury or illness two or more times by a provider of health care services." 29 C.F.R. § 825.114. AC Transit argues that Sims was not treated two or more times by "a" health care provider because Sims was never treated twice by the same person for his health condition. Sims was treated at Kaiser Hospital on two different occasions for his condition, but he was seen by a different doctor on each occasion. AC Transit emphasizes that each doctor pronounced Sims fit to return to work on a certain date and did not refer him to another

doctor or recommend that he return for a follow up appointment.

Defendant misconstrues the requirement that the employee be treated two or more times by a health care provider. Continuing treatment by a health care provider does not require that the employee consult the same individual on two or more occasions. Rather, it means that the same health condition required care from a health care provider on two or more occasions. "Continuing treatment by a health care provider" means "[t]he employee ... is treated two or more times for the injury or illness by a health care provider." 29 C.F.R. § 825.114(b)(1). This court doubts that Congress intended to exclude from coverage those who, like Sims, subscribe to Health Maintenance Organizations which often assign different doctors to treat the same patients' ongoing medical condition.

■ AC Transit's last argument raises a more difficult issue. AC Transit argues that Sims' certification was inadequate because one of the notes he submitted did not come from a "health care provider" as that term is defined by the Act. A serious health condition must "involve," for the purposes of this case, continuing treatment by a "health care provider." 29 U.S.C. § 2611(11)(A) & (B). Continuing treatment by a health care provider means that "the employee ... is treated two or more times ... by a health care provider." 29 C.F.R. § 825.114(b)(1). AC Transit argues that Sims' chiropractor, who wrote the only note that excused Sims for the last two days of his absence (May 2–3, 1994), is not a "health care provider" under the Act.

The Act defines "health care provider" as (A) a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or (B) any other person determined by the Secretary to be capable of providing health care services. 29 U.S.C. § 2611(6). A chiropractor is not a doctor authorized to practice medicine or surgery by the State of California. The Secretary of Labor has defined "others capable of providing health care services" to include only "Podiatrists, dentists, clinical psychologists, optometrists, and *chiropractors (limited to treatment consisting of manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist.)*" 29 C.F.R. § 825.118(b)(1) (emphasis added).

Thus, Sims' chiropractor only qualifies as a "health care provider" under the Act to the extent her treatment of Sims consisted of "manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist." *See Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1166 (N.D.Ohio 1997). Sims admits that he was not X-rayed in connection with his treatment by either the Kaiser doctors or his chiropractor during his absence. Thus, AC Transit is correct that for the purposes of her treatment of Sims, Sims' chiropractor did not qualify as a "health care provider" under the Act, and the May 2–3, 1994 portion of Sims' absence was not excused by a health care provider. *See id.*.

This does not mean, however, that Sims failed to present certification from a health care provider that he had a serious health condition. Sims' certification is sufficient to establish that he had a "serious health condition" under the Act *without reference to* his chiropractic treatment or the note from the chiropractor. Before Sims went to the chiropractor, Sims saw two Kaiser medical doctors. The first provided a medical note that Sims was unable to work from April 16 through April 25, 1994. The second provided a medical note that he was unable to work from April 26 through May 1, 1994. This certification from health care providers establishes on its face that Sims had an impairment which incapacitated him for more than three days and involved "continuing treatment," i.e. treatment two or more times by a health care provider. Thus, Sims' certification is sufficient to establish that he had a "serious health condition" under the Act. *See* 29 U.S.C. § 2611(11); 29 C.F.R. § 825.114.[5, 6]

5. In this respect, this case is distinguishable from *Rhoads v. Federal Deposit Ins. Corp.*, 956 F.Supp. 1239 (D.Md.1997) (unpublished), on which AC Transit relies. In *Rhoads*, the employee argued that the employer waived its ability to challenge the seriousness of her illness by not following the medical certification procedures of the FMLA.

*Id.* at 1256. The court rejected this argument in a footnote, stating that:

There is simply no authority for that claim in this Circuit or elsewhere. Furthermore, those procedures guide employers at their option under the statute, "[a]n employer may require

However, Sims did not properly certify that this serious health condition lasted the full duration of his absence. Sims was absent from April 18 through May 3. He had notes from Kaiser medical doctors that excused him from April 18 through May 1. All but the last two days of his absence were excused by medical doctors.

■ AC transit argues that because the last two days of Sims' absence were not excused by a qualifying health care provider, the absence properly served as grounds on which to charge Sims with his ninth occurrence. It contends that under its contract with its union, an absence is properly chargeable as an occurrence if any portion of the absence is not protected by the FMLA.

If AC Transit had fulfilled its obligations under the Act to properly notify Sims that it considered his certification to be incomplete and to give him a reasonable opportunity to correct it, the court might agree with AC Transit. But AC Transit did not do so. The two-day insufficiency in his certification may not be properly used as grounds for discipline against him because AC Transit never notified him that the note he presented from his chiropractor was inadequate or of lesser value than the notes from the Kaiser doctors. The regulations provide that "[t]he employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(c). AC Transit concedes that it never informed Sims that his certification

was inadequate in any way. It had an obligation, however, to do so. Nor did AC Transit ever notify Sims in writing that he had to provide medical certification in his particular case or of the consequences of his failing to do so. The regulations provide that "[a]n employer must give written notice of a requirement for medical certification ... in a particular case." 29 C.F.R. § 825.305(a).

Nor did AC Transit inform Sims about what he needed to do in order to obtain coverage under the Act. The regulations provide that in *all* cases,

> when an employee provides notice of the need for FMLA leave, *the employer shall provide the employee with notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations.* Such specific notice should include, as appropriate: ... [a]ny requirements for the employee to furnish medical certification of a serious health condition and the consequences of failing to do so (see § 825.210).

29 C.F.R. § 825.301(c) (emphasis added). "If an employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice." 29 C.F.R. § 825.301(f) (final regulations). At no time after Sims provided notice of his need for leave did AC Transit ever provide Sims with notice detailing the procedures he

that a request for leave ... be supported by a certification issued by the health care provider of the eligible employee...." 29 U.S.C. § 2613. While such certification may protect an employer with regard to disputes over the seriousness of a health condition, the lack thereof, in the absence of an otherwise viable FMLA claim, is surely insufficient to establish an FMLA violation. *Id.* at 1256. The facts in *Rhoads* are distinguishable from the facts here because the plaintiff in *Rhoads* provided no certification at all prior to her termination regarding her alleged inability to work during the absence in question. *Id.* at 1257. Here, in contrast, before AC Transit reached its final decision on May 16, 1994 to suspend Sims's for his absence of April 18–May 3, Sims provided documents which on their face established that he had a serious health condition under the Act. Thus, unlike in *Rhoads*, there is an "otherwise viable FMLA claim" in this case.

**6.** The fact that "health care providers" as defined by the Act certified that Sims was incapacitated for more than three days also distinguishes this case from *Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1167 (N.D.Ohio 1997), on which AC Transit relies. In *Olsen*, "the only health care professional to authorize an absence in excess of three days was a chiropractor." The court found that where "an employee claiming the right to leave under the FMLA has not established that a qualifying 'health care provider' made an assessment of his or her condition and concluded that proper treatment of that condition 'required' the employee's absence from work for over three days, summary judgment in favor of the employer-defendant is appropriate." *Id.* at 1167–68. Here, however, qualifying health care providers concluded that Sims' condition required his absence from work for over three days.

needed to follow in order to secure coverage under the Act, including what type of doctor qualifies as a "health care provider" under the Act. Thus, AC Transit may not take action against Sims for failing to comply with such obligations. *Id.*

■ AC Transit argues that its duties to notify Sims of his rights and obligations under FMLA and to inform him that his certification was inadequate were never triggered in this case because Sims did not properly notify AC Transit that he was seeking FMLA leave. The court disagrees. The parties agree that Sims' need for leave was unforeseeable. Where the need for leave is unforeseeable, "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Moreover,

> [i]f leave is taken for an FMLA reason but the employer was not aware of the reason, and the employee desires that the leave be counted as FMLA leave, the employee must notify the employer within two business days of returning to work of the reason for the leave.

29 C.F.R. § 825.208(e)(1). However, "[t]he employee need not expressly assert rights under FMLA or even mention FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 764 (5th Cir.1995) (notice to employer sufficient where employee called to say she could not return to work due to complications from treatment of an ingrown toenail). "The employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason." *Gay v. Gilman Paper Co.,* 125 F.3d 1432, 1436 (11th Cir.1997).

Here, Sims notified AC Transit of his need for leave "as soon as practicable" and submitted his medical notices to AC Transit within the outer limit of two days after his return to work. It is undisputed that Sims called into

work on April 18, 1994 and told the dispatcher that he "needed to be put on the sick book." AC Transit concedes that during Sims' absence, Sims went into the bus yard on at least three occasions and signed the "sick book." AC Transit also concedes that Sims submitted the three doctor's slips within two days of his return to work. This was sufficient information to put AC Transit on notice that Sims' absence was due to a potentially FMLA-qualifying reason, and thus triggered AC Transit's duty to inquire further into whether the leave qualified for FMLA protection. 29 C.F.R. §§ 825.303(b), 825.302(c). *See also Price v. City of Fort Wayne,* 117 F.3d 1022, 1025–26 (7th Cir. 1997); *Brannon v. OshKosh B'Gosh, Inc.,* 897 F.Supp. 1028, 1038 (M.D.Tenn.1995). AC Transit made no such inquiry, and simply charged Sims with a ninth occurrence.

■ AC Transit contends that Sims should be estopped from arguing that he was not properly notified of his rights and obligations under FMLA because he did not respond to the "come see me" notice AC Transit allegedly issued to him on April 18, 1994. Sims denies ever receiving this notice. But even if we assume that AC Transit's version of the facts are true and that Sims did receive the notice, AC Transit still failed to meet its obligations under the Act. A generic "come see me" notice, which merely indicates that a manager would like to speak with the employee, is not the equivalent of written notification of one's obligation to provide adequate certification and the consequences of failing to do so, or of "notice detailing the specific expectations and obligations of the employee." An employer can not meet its obligation to notify an employee of his specific obligations under the Act, including the consequences of failing to meet any such obligations, with a notice that mentions nothing what so ever about the FMLA. *See e.g. Reich v. Midwest Plastic Engineering, Inc.,* 1995 WL 478884 at *8, 66 Empl. Prac. Dec. P 43701 (W.D.Mich.1995) (unpublished). Moreover, the alleged "come see me" notice was dated April 18, 1994, about two weeks before Sims submitted any certification to AC Transit. Thus, the proposed meeting could not have been intended to inform Sims that his certification was inade-

quate or to provide him a reasonable opportunity to cure any deficiency.

Sims' notice to AC Transit was sufficient to inform AC Transit that he had a serious health condition which might have extended through May 3 and that he wanted medical leave. AC Transit, however, did not take the required steps to alert Sims that his certification was inadequate or inform him of what he had to do to secure leave. Thus, AC Transit may not assert in this court that Sims did not have a serious health condition on May 2–3, 1994, or during the rest of his absence.

## VI. CONCLUSION

In sum, the court concludes that where an employee's initial medical certification establishes that he had a serious health condition, and the employer fails to require the employee to obtain a second medical opinion (and a third if the first two conflict), the employer waives its right to later contest the veracity of the initial medical certification and argue that the employee did not have a serious medical condition at the time of his absence. Having failed to exhaust the second and third-opinion process, AC Transit may not now challenge in court the medical findings of Sims' health care providers as expressed in Sims' initial certification.

Although Sims adequately notified AC Transit that he needed medical leave, AC Transit failed to notify Sims that the certification he presented was inadequate to the extent it relied on the opinion of a chiropractor. Having failed to bring this defect to Sims' attention at the appropriate time under the Act, and having failed to give Sims an opportunity to cure the problem, and having failed to notify Sims specifically about what he needed to do to secure coverage under FMLA, AC Transit may not now dispute that Sims had a serious health condition throughout the duration of his absence. As a matter of law, AC Transit waived its right to argue that Sims did not have a serious health condition under the Act, and Sims is entitled to a legal presumption that he had such a condition throughout the duration of his April 18–May 3, 1994 absence.

Plaintiff's motion for partial summary adjudication is GRANTED. Defendant's motion for summary judgment is DENIED. A status conference will be held on May 8, 1998 at 11:00 A.M to consider a schedule for the remaining issues.

IT IS SO ORDERED.