[No. S130839. Apr. 7, 2008.]

ANTONINA LONICKI, Plaintiff and Appellant, v.
SUTTER HEALTH CENTRAL, Defendant and Respondent.

**COUNSEL**

Martin F. Jennings, Jr.; The deRubertis Law Firm, David M. deRubertis and David A. Lesser for Plaintiff and Appellant.

Patricia A. Shiu, Elizabeth Kristen, Sharon Terman and Joseph R. Grodin for Asian Law Caucus, California Employment Lawyers' Association, California

Women's Law Center, Disability Rights Education and Defense Fund, Inc., Equal Rights Advocates and The Legal Aid Society-Employment Law Center as Amici Curiae on behalf of Plaintiff and Appellant.

Riegels Campos & Kenyon, Kenyon Yeates, Jeffrey Owensby and Charity Kenyon for Defendant and Respondent.

Latham & Watkins, Joel E. Krischer and Kristin R. Lewis for Employers Group and California Employment Law Council as Amici Curiae on behalf of Defendant and Respondent.

---

OPINION

**KENNARD, J.**—Under the Moore-Brown-Roberti Family Rights Act (Gov. Code,[1] §§ 12945.1, 12945.2; hereafter CFRA) a full-time employee is entitled to a medical leave of absence for a "serious health condition" that makes the employee "unable to perform the functions of the position of that employee." (§ 12945.2, subd. (c)(3)(C).) In this case, an employee claiming major depression and work-related stress stopped coming to work and requested medical leave. In the employer's view, the employee did not have a serious health condition and was capable of performing her duties. The employer ordered the employee to return to work, and fired her when she did not. The employee sued.

We address two issues:

First, does an employer's failure to invoke the CFRA's dispute-resolution mechanism of having a health care provider jointly chosen by the parties determine the employee's entitlement to medical leave bar the employer from later claiming that the employee did not suffer from a serious health condition and was capable of performing her job? Our answer is "no."

Second, if a full-time employee, during the period in which medical leave was sought, continued to perform a similar job for *another* employer on a part-time basis, does that *conclusively* establish the ability to do the job for the original employer? We conclude that, although that part-time job is *evidence* of ability to do similar work for the original employer from whom the employee has sought medical leave, that evidence is not *conclusive*. Here, because the parties have presented contrary evidence as to whether the employee had a serious health condition that made her unable to do her full-time job, there is a disputed issue of fact that must be resolved at trial.

---

[1] Unless otherwise stated, all further statutory citations are to the Government Code.

I

"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [32 Cal.Rptr.3d 436, 116 P.3d 1123].)

In 1989, Sutter Health Central (defendant) hired plaintiff Antonina Lonicki to work in the housekeeping department at its hospital in Roseville. In 1993, plaintiff became a certified technician in the hospital's sterile processing department. Her work performance was good and her attendance was excellent.

In June 1997, the hospital became a level II trauma center. That change, according to plaintiff, led to a major increase in her workload and more stress. The workers in plaintiff's unit asked for more help, to no avail. In November 1998 the hospital announced that it would lay off three people. In December 1998, plaintiff's supervisor and the director resigned. They were replaced by Pat Curtis and Steve Jatala, respectively. Actions by Pat Curtis increased plaintiff's stress. She consulted a doctor.

On July 26, 1999, when plaintiff arrived at work for her 8:00 a.m. shift, supervisor Curtis told her that her new shift would be from noon to 8:30 p.m. Curtis denied plaintiff's request for a vacation. Plaintiff went home in tears. After talking to her union representative, she telephoned Curtis and said she was too upset to work. That afternoon, Curtis left a message on plaintiff's telephone answering machine conveying director Steve Jatala's request that she get medical authorization for her absence.

Plaintiff called her primary care physician, Dr. Roy Harris, but was told that he was on vacation. His office gave her an appointment the next day with a family nurse practitioner, Joe Lobacarro. Plaintiff saw Lobacarro, who gave her a note for a one-month leave of absence for "[m]edical reasons." He also referred her to a therapist. Later that day, plaintiff brought the note to her employer; she also filled out a form requesting a one-month leave of absence, which she gave to supervisor Curtis.

On August 2, 1999, director Jatala told plaintiff to see Dr. Michael Cohen, an occupational health physician chosen by defendant employer. Plaintiff did

so on August 4, 1999. After talking to plaintiff for two or three minutes, Dr. Cohen concluded that plaintiff was able to return to work without restrictions, which he stated in a brief written report prepared for defendant. On August 6, director Jatala telephoned plaintiff and told her to return to work on August 9 or face dismissal. Plaintiff talked to a union representative, who suggested that she follow the medical advice given by her primary physician, Dr. Roy Harris. When she discussed the matter with Dr. Harris, he referred her to Psychologist Janice Pettis. Plaintiff saw Pettis on August 11, and thereafter saw her weekly until August 31, 1999.

On August 17, 1999, director Jatala telephoned plaintiff and asked when she would come back to work. Plaintiff replied that on the advice of her doctors, she would return no sooner than August 27. Thereafter Jatala sent a letter to plaintiff stating that he had discussed the matter with plaintiff's union representative, Mike Egan, and that Jatala would allow plaintiff paid time off—not medical leave—but that plaintiff had to return to work by August 23 or face dismissal.[2] On August 24, plaintiff received the letter.

On August 26, plaintiff consulted Dr. Frank Capobianco, a psychiatrist. He wrote her a note stating that she was "disabled by major depression," that her symptoms were "work related," that she required "sick leave," and that her medical leave should be extended to September 26, 1999. The next day, plaintiff delivered the note to director Jatala. He told her to go to the human resources department, which told her that she had been discharged for failure to appear for work on August 23 and August 24, 1999.

After obtaining a right-to-sue letter from the Department of Fair Employment and Housing, plaintiff sued defendant employer for violating the CFRA by firing her and by failing to follow CFRA procedures when questioning the validity of her sick leave. Defendant moved for summary judgment. As pertinent here, defendant argued that plaintiff was not entitled to medical leave under the CFRA because, in the period for which she sought medical leave, she had a part-time job at a different hospital (Kaiser) where her tasks were substantially similar to those she was hired to perform at defendant's hospital in Roseville. This part-time job with Kaiser, defendant asserted, showed that plaintiff did not have a "serious health condition" that made her "unable to perform the functions" of her full-time job for defendant, as required under the CFRA. (§ 12945.2, subd. (c)(3)(C).) Thus, according to defendant, plaintiff did not qualify for CFRA medical leave, and hence her discharge by defendant did not violate the CFRA.

---

[2] Director Jatala appears to have believed that union representative Egan was acting as plaintiff's representative, and that the agreement described in the letter was a settlement of the dispute that Egan had agreed to on plaintiff's behalf. Plaintiff, however, denies that she ever authorized Egan to negotiate on her behalf.

Plaintiff responded that whether she had a serious health condition that left her unable to do her job at defendant's hospital in Roseville was a disputed issue of fact. She also asserted that because of defendant's failure to submit that dispute to a health care provider jointly chosen by the parties, a decision that would have been binding (see § 12945.2, subd. (k)), defendant was estopped from arguing that plaintiff did not satisfy the statutory criteria for medical leave.

The trial court rejected plaintiff's estoppel argument. It agreed with defendant that plaintiff's part-time job at Kaiser during her leave of absence from defendant's employment "showed that she could perform the essential functions of her job" for defendant. The court granted defendant's motion for summary judgment. Plaintiff appealed from the ensuing judgment of dismissal, which the Court of Appeal later affirmed. We granted plaintiff's petition for review.

## II

■ The CFRA applies to companies with 50 or more employees; it allows an employee up to 12 weeks of unpaid "family care and medical leave" if the employee has worked for the company for more than a year, and has at least 1,250 hours of service during the previous year. (§ 12945.2, subd. (a).) Grounds for the leave are family needs such as the birth or adoption of a child, serious illness of a family member, or, as relevant here, when "an employee's own *serious health condition . . . makes the employee unable to perform the functions of the position of that employee . . . .*" (§ 12945.2, subd. (c)(3)(C), italics added.) The CFRA defines a " '[s]erious health condition' " as "an illness, injury, impairment, or physical or mental condition that involves either of the following: [¶] (A) Inpatient care in a hospital, hospice, or residential health care facility. [¶] (B) Continuing treatment or continuing supervision by a health care provider." (§ 12945.2, subd. (c)(8).)

■ The employer may require the employee to submit a certification by the employee's health care provider, which "shall be sufficient if it includes all of the following: [¶] (A) The date on which the serious health condition commenced. [¶] (B) The probable duration of the condition. [¶] (C) A statement that, due to the serious health condition, the employee is unable to perform the function [*sic*] of his or her position." (§ 12945.2, subd. (k)(1).)

An employer who "has reason to doubt the validity of" the employee's health certification "may require, at the employer's expense, that the employee obtain the opinion of a second health care provider, designated or approved by the employer, concerning any information certified . . . ."

(§ 12945.2, subd. (k)(3)(A).) If there is *a difference of opinion between the two*, "the employer may require, at the employer's expense, that the employee obtain the opinion of a third health care provider, designated or approved *jointly* by the employer and the employee . . . ." (§ 12945.2, subd. (k)(3)(C), italics added.) The opinion of the third provider is "binding on the employer and the employee." (§ 12945.2, subd. (k)(3)(D).)

■ During the employee's medical leave, the employer must continue to provide the employee with health benefits (§ 12945.2, subd. (f)), and upon return to work the employee must be given the same seniority as before the leave. (§ 12945.2, subd. (g).)

The CFRA is modeled after federal legislation, the Family and Medical Leave Act of 1993. (29 U.S.C. §§ 2601–2654; hereafter the FMLA.) The language of the CFRA provisions at issue here is virtually identical to the language of their counterparts in the FMLA.

### III

Plaintiff contends that defendant's failure to use the CFRA's dispute-resolution procedure discussed in part II, *ante*, estops defendant from asserting that when plaintiff sought medical leave, she did not suffer from a serious health condition that made her unable to do her job at defendant employer's Roseville hospital.

Here, as permitted under the CFRA, defendant employer did require plaintiff to see a *second* health care provider, chosen by defendant; that provider, unlike plaintiff's own health care provider, concluded that plaintiff did not have a serious health condition and was able to perform her job for defendant. But defendant never availed itself of the CFRA provision that allows an employer faced with two conflicting medical opinions to refer the matter to a *third* health care provider, whose opinion is final and binding on both parties. Defendant's failure to do so, plaintiff contends, bars it from challenging plaintiff's claim of having a serious health condition that made her unable to do her job at defendant's Roseville hospital.

■ To determine the merits of plaintiff's argument, we need to examine the statutory language. "Our task is to discern the Legislature's intent. The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the

measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 [48 Cal.Rptr.3d 108, 141 P.3d 225]; see also *Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1271 [135 Cal.Rptr.2d 654, 70 P.3d 1067].)

■ Here, the pertinent statutory language does *not* require an employer faced with two conflicting health care provider opinions to obtain a binding decision from a third health care provider, and it does *not* say that an employer who fails to obtain such a decision will be barred, in litigation with the employee, from claiming that the employee did not suffer from a serious health condition making the employee unable to work. What the statutory language denotes is a legislative intent to offer the employer a choice of obtaining or not obtaining a binding decision from a third health care provider, if there is a difference of opinion between plaintiff's health care provider and the one designated by the employer. Subdivision (k)(3)(C) of section 12945.2 simply states that an employer *may* resort to that remedy. (See § 14 [" 'Shall' is mandatory and 'may' is permissive."].)

Justice Moreno's concurring and dissenting opinion concludes otherwise. He relies on subdivision (k)(1) of section 12945.2, which, as previously mentioned (*ante*, at p. 208), provides that a certification by the employee's health care provider "*shall be sufficient* if it includes all of the following: [¶] (A) The date on which the serious health condition commenced. [¶] (B) The probable duration of the condition. [¶] (C) A statement that, due to the serious health condition, the employee is unable to perform the function [*sic*] of his or her position." (Italics added.) By using the italicized three words, the concurring and dissenting opinion concludes, the Legislature intended to provide that an employer's *only way* to challenge the validity of a certification is by a two-step process: First, the employer must insist that the employee be examined by the employer's health care provider; second, if this health care provider concludes that medical leave is not warranted, the employer and the employee must jointly choose a third health care provider to resolve the dispute.

Putting aside for a moment the *meaning* of the three words on which the concurring and dissenting opinion relies, the *location* of those words—in subdivision (k)(1) of section 12945.2—is noteworthy. This subdivision of the CFRA has nothing to do with the third health care provider; rather, it discusses the employer's right to insist on a certification showing that the employee suffers from a condition that necessitates medical leave. It would be odd, to say the least, for the Legislature to have placed language requiring employers to use a third health care provider in such a provision. This is

particularly true because of the far-reaching consequences of the concurring and dissenting opinion's interpretation of those words: Employers would be completely barred, *in all cases*, from litigating an employee's entitlement to medical leave. (An employer who *uses* the third health care provider is, under the statutory scheme, expressly barred from challenging the health care provider's determination, which is binding (§ 12945.2, subd. (k)(3)(C)); and under Justice Moreno's construction, subdivision (k)(1) of section 12945.2 equally bars an employer who *does not use* the third health care provider.)

Had the Legislature intended to take such a dramatic step, surely it would have expressed that intent in a subdivision pertaining to the third health care provider, rather than a subdivision dealing solely with employee certifications. And instead of the three ambiguous words "shall be sufficient," surely the Legislature would have used clear and unambiguous language similar to that used in subdivision (k)(3)(D) of section 12945.2, where it said the decision of the third health care provider "shall be considered to be final and shall be binding on the employer . . . ."

■ In any event, as explained below, subdivision (k)(1) of section 12945.2 does not *require* an employer to submit disputes regarding an employee's entitlement to medical leave to a third health care provider.

By stating that an employee's certification "shall be sufficient" if it contains the commencement date that the employee's health condition began, the "probable duration of the condition," and a statement that the condition renders the employee unable to do the job, subdivision (k)(1) of section 12945.2 *limits the type of information that an employer can require an employee to provide in a certification*. For example, an employer may not require an employee seeking medical leave to provide detailed intimate and private information about a serious psychiatric condition that has made the employee unable to do the work, nor may the employer deny the employee's request for medical leave for failing to provide such information. This statutory provision also limits an employer's right, in litigation arising out of an employee's medical leave request, to claim that the employer acted reasonably because the information provided by the employee was inadequate: If an employer fires an employee who has given the employer a facially valid certification in support of a request for medical leave and the employee then sues for violation of the CFRA, the employer may not defend the suit by asserting that the employee, when requesting leave, provided insufficient evidence that the employee fell within the provisions of the CFRA. But subdivision (k)(1) of section 12945.2 does not limit the employer's choice of legal remedies. It does not say that when an employer questions the validity of an employee's medical leave request that is supported by a valid certification, the employer's *only recourse* is to submit the

matter to a third health care provider for a binding determination. And it does not say that when an employee who has been denied medical leave sues the employer for violation of the employee's rights under the CFRA, the employer's failure to have the dispute submitted to a third health care provider estops the employer from denying in the litigation that the employee suffered from a serious health condition.

Our conclusion finds support in *Rhoads v. F.D.I.C.* (4th Cir. 2001) 257 F.3d 373, a federal appellate decision. There, the court construed the dispute-resolution provisions of the FMLA, which, as we noted earlier, are identical to those in the CFRA. The court stated: "The FMLA provides only that an employer 'may' seek a second, or third, opinion if it questions the validity of an employee's proffered medical certification of her condition. [Citations.] Because the term 'may' is permissive, the plain language of the statute indicates that an employer who questions the validity of a certification has the option of seeking a second and third opinion, without being required to do so. Moreover, the plain language of the [FMLA] does not suggest that an employer must pursue these procedures *or* be forever foreclosed from challenging whether an employee suffered from a serious health condition; and nothing in the legislative history of the FMLA explicitly supports that interpretation." (*Rhoads v. F.D.I.C., supra,* 257 F.3d at pp. 385–386.) Two other federal circuit courts have reached the same conclusion. (*Novak v. Metrohealth Medical Center* (6th Cir. 2007) 503 F.3d 572, 579; *Stekloff v. St. John's Mercy Health Systems* (8th Cir. 2000) 218 F.3d 858, 860 (*Stekloff*).)

To the contrary are three federal trial court decisions and an appellate court decision from the State of Louisiana, which plaintiff has cited and which we discuss below.

In *Sims v. Alameda-Contra Costa Transit Dist.* (N.D.Cal. 1998) 2 F.Supp.2d 1253 (*Sims*), the employer took disciplinary action against a bus driver after he failed to come to work for two weeks, concluding that the absence was unexcused. The employer never asked the driver, who said he had a back problem and furnished corroborating notes from two physicians and a chiropractor, to submit to an examination by the employer's health care provider. After the employer discharged the driver in the wake of another unexcused absence occurring two months thereafter, the driver sued under both the FMLA and the CFRA, claiming that his back problem was a serious health condition and that his two-week absence was therefore statutorily authorized medical leave.

The federal trial court in *Sims* concluded that because the employer had not used the dispute-resolution procedures of the FMLA and CFRA, it was barred from challenging the accuracy of the physician notes that the driver had

submitted to his employer upon returning to work from his two-week absence. The court reasoned: "To allow courts, rather than doctors, to determine the medical condition of an employee who seeks leave would upset the balance between the eligible employee's right to swift and expeditious coverage and the employer's right to ensure that the requested leave is needed. The policy of providing swift and expeditious coverage would be undermined if an employer could simply deny leave to an employee who has presented adequate certification of his need for and entitlement to medical leave. An employee in that situation would have no recourse other than to forego the leave to which he may be entitled under the [FMLA] . . . or to take leave, suffer the employer's discipline . . . , sue his employer, and then wait for the court to decide. Time is of the essence when an employee requests medical leave." (*Sims, supra,* 2 F.Supp.2d at p. 1261.) Relying on *Sims,* two other federal trial courts and a Louisiana appellate court have reached similar conclusions. (*Wheeler v. Pioneer Developmental Services, Inc.* (D.Mass. 2004) 349 F.Supp.2d 158, 167; *Washington v. Fort James Operating Co.* (D.Or. 2000) 110 F.Supp.2d 1325, 1333–1334; *Williams v. Rubicon, Inc.* (La.Ct.App. 1999) 754 So.2d 1081, 1085–1086.) We are not persuaded.

Under both the CFRA and its federal counterpart, the FMLA, an employee is entitled to medical leave when, because of a serious health condition, the employee cannot perform the assigned job's duties. If an employer doubts the validity of such a claim, nothing in either law precludes the employer from denying the employee's request for medical leave and discharging the employee if the employee does not come to work. Of course, an employer embarking on that course risks a lawsuit by the employee and perhaps a finding by the trier of fact that the employer's conduct violated the employee's rights under either the CFRA or the FMLA, or both, by denying the requested medical leave. To avoid such risks, the employer can resort to the dispute-resolution mechanism provided for by both laws.

■ To summarize: Defendant employer's failure to use the CFRA's dispute-resolution procedure—obtaining a binding determination by a third health care provider when there are two conflicting opinions—does not bar it from asserting, in this litigation, that it was justified in firing plaintiff because she did not meet the statutory requirement of having a serious health condition that made her unable to do her job.

## IV

As discussed earlier, the CFRA entitles a full-time employee to take medical leave of up to 12 weeks when the employee has a "serious health condition that makes the employee unable to perform the functions of the position of that employee." (§ 12945.2, subd. (c)(3)(C).) Here, it is undisputed that, during the time plaintiff claims she had a serious health condition

that made her unable to do her full-time job as a technician in the sterile processing department at defendant's Roseville hospital, she had a part-time job with nearly identical duties at a different hospital, Kaiser. In her deposition, plaintiff admitted that her duties at Kaiser were "[a]bout [the] same," but that it was "a lot slower" at Kaiser because, unlike defendant's hospital, Kaiser was not a trauma hospital and did not get "bad cases."

In granting defendant's motion for summary judgment, the trial court ruled that plaintiff's ability to work part-time for Kaiser in a job that was similar to the one she had at defendant's hospital, at a time when she claimed that because of a serious medical condition she could not do her job for defendant, conclusively demonstrated that she was able to perform her duties at defendant's hospital. The Court of Appeal affirmed the trial court, reasoning that under the CFRA an employer must grant medical leave only if the employee is unable to perform the employee's essential job functions "generally, rather than for a specific employer."

Plaintiff challenges the Court of Appeal's holding, arguing that the relevant inquiry is whether a serious health condition made her unable to do her job at defendant's hospital, not her ability to do her essential job functions "generally," as the Court of Appeal concluded. She is right. Neither the CFRA nor the FMLA, after which the CFRA was modeled, has language supporting the Court of Appeal's holding.

■ Pertinent here is this statement from a leading treatise on employment litigation: "A showing that an employee is unable to work in the employee's current job due to a serious health condition is enough to demonstrate incapacity. The fact that an employee is working for a second employer does not mean he or she is not incapacitated from working in his or her current job." (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2006) ¶ 12:266, p. 12-28 (rev. # 1, 2006).) Some six years earlier, in *Stekloff, supra,* 218 F.3d 858, a federal appellate court made the same point.

The plaintiff in *Stekloff* worked as a psychiatric nurse. After an argument with her supervisor, she left work, and thereafter obtained a note from her physician recommending that she not return to work for two weeks. When the employer fired her for "job abandonment," she sued, claiming violation of the FMLA. The federal trial court ruled that the employer was entitled to summary judgment because, at the time of discharge, the plaintiff was working part time as a nurse for a different employer. The federal court of appeals disagreed. It held: "[A] demonstration that an employee is unable to work in his or her current job due to a serious health condition is enough to show that the employee is incapacitated, even if that job is the only one that the employee is unable to perform." (*Stekloff, supra,* 218 F.3d at p. 861.) The

court explained that "the inquiry into whether an employee is able to perform the essential functions of her job should focus on her ability to perform those functions in her current environment." (*Id.* at p. 862.) We agree.

*Stekloff* involved the FMLA, whereas here it is the CFRA that is at issue. But, as we observed earlier, the CFRA is modeled after the FMLA, and the language of the CFRA provision at issue here is virtually identical to the language of its counterpart in the FMLA.[3] Therefore, we see no reason not to apply the statutory analysis of *Stekloff, supra,* 218 F.3d 858, here.

When a serious health condition prevents an employee from doing the tasks of an assigned position, this does not necessarily indicate that the employee is incapable of doing a similar job for another employer. By way of illustration: A job in the emergency room of a hospital that commonly treats a high volume of life-threatening injuries may be far more stressful than similar work in the emergency room of a hospital that sees relatively few such injuries. Also, the circumstance that one job is full time whereas the other is part time may be significant: Some physical or mental illnesses may prevent an employee from having a full-time job, yet not render the employee incapable of working only part time.

The Court of Appeal here expressed concerns about abuse of the CFRA's medical leave provisions by employees who, like plaintiff here, assert stress-related claims: "[E]veryone would like to hold a job as stress free as possible. [Citation.] But stress inheres in most jobs, and personality conflicts with coworkers, particularly supervisors, can arise. If an employee is entitled to make legal demands on an employer merely because his or her boss creates stress, . . . 'supervisors would no longer be able to manage effectively, without fear of constant demands for transfer by their increasingly hypersensitive employees.' "

 Those concerns raise issues of policy that should be addressed to the Legislature rather than this court, whose task is limited to construing the laws enacted by the Legislature. Both the CFRA and its federal counterpart, the FMLA, allow medical leave for a stress-related condition, as long as the condition is so serious as to prevent the employee from doing the assigned job. Indeed, a federal regulation interpreting the FMLA expressly states that

---

[3] The CFRA states that an employee is entitled to medical leave based on a "serious health condition that makes the employee unable to perform the functions of the position of *that* employee." (§ 12945.2, subd. (c)(3)(C), italics added.) The CFRA's federal counterpart, the FMLA, says that an employee is entitled to medical leave when the employee suffers from a "serious health condition that makes the employee unable to perform the functions of the position of *such* employee." (29 U.S.C. § 2612 (a)(1)(D), italics added.) The slight difference in wording—"that" versus "such"—is insignificant.

"[m]ental illness resulting from stress . . . may be [a] serious health condition[] . . . ." (29 C.F.R. § 825.114(c) (2007).) The California Fair Employment and Housing Commission, the agency responsible for administering the CFRA, has incorporated by reference the federal regulations interpreting the FMLA to the extent they do not conflict with the CFRA, the California Constitution, and other state laws. (Cal. Code Regs., tit. 2, § 7297.10.)

Defendant employer here considers it significant that one of those federal regulations (29 C.F.R. § 825.115 (2007)) defines an employee's inability to perform essential functions of the assigned job by reference to the Americans with Disabilities Act of 1990. (42 U.S.C. § 12101 et seq.; hereafter ADA.) According to defendant, "courts applying the ADA have not found a qualifying disability, where the employee's claim is limited to a specific shift or supervisor." At issue here is not plaintiff's ability to work a particular shift, but whether her part-time work for a different employer conclusively established her ability to work full time for defendant. Also, the ADA is a distinct statutory scheme, whose provisions do not resemble those in either the FMLA or its California counterpart, the CFRA. That distinction is expressly recognized in the federal regulations interpreting the FMLA: "ADA's 'disability' and FMLA's 'serious health condition' are different concepts, and must be analyzed separately." (29 C.F.R. § 825.702(b) (2007).)

We therefore conclude that under section 12945.2's subdivision (c)(3)(C), which entitles an employee to medical leave when suffering from a "serious health condition" that "makes the employee unable to perform the *functions of the position of that employee*" (italics added), the italicized phrase refers to *the job assigned to the employee by his or her employer*; it does not refer, as the Court of Appeal here held, to "an inability to perform the essential job functions generally, rather than for a specific employer."

In this case, plaintiff's ability, during the period when she was seeking medical leave from defendant employer, to work part time for a different hospital (Kaiser), doing tasks virtually identical to those she claimed she was unable to perform for defendant, is strong evidence that she was capable of doing her full-time job at defendant's Roseville hospital. But that evidence is not dispositive, as it is contradicted by plaintiff and her treating psychologist. Thus, whether plaintiff did have a serious health condition that made her unable to do her full-time job for defendant is a disputed issue of fact to be resolved at trial. Consequently, the trial court erred in granting defendant's summary judgment motion on the ground that plaintiff's ability to work part

time at Kaiser *conclusively* established her ability to perform similar duties full time at defendant's hospital.[4]

DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.

George, C. J., and Werdegar, J., concurred.

**CHIN, J.,** Concurring and Dissenting.—The Moore-Brown-Roberti Family Rights Act (Gov. Code, §§ 12945.1, 12945.2; CFRA) gives a full-time employee the right to a medical leave of absence for a "serious health condition that makes the employee unable to perform the functions of the position of that employee . . . ." (*Id.*, § 12945.2, subd. (c)(3)(C).) I agree with the lead opinion that an employer's failure to invoke the CFRA's dispute-resolution mechanism of having a health care provider determine the employee's entitlement to medical leave does not bar the employer from asserting that the employee did not suffer from a health condition that rendered her incapable of performing her job.

I do not agree with the lead opinion, however, that an employee who claims to suffer from a serious health condition may apply for medical leave under the CFRA while she is successfully performing the essential functions of an *identical* job for a similar employer, on a part-time basis. An employee

---

[4] According to Justice Chin's concurring and dissenting opinion, the Legislature intended to bar a full-time employee from seeking medical leave under the CFRA when the employee continues to perform a similar job for another employer on a part-time basis. But that opinion does not identify any CFRA provision so stating. Instead, that opinion merely asserts that the Legislature's intent " 'is apparent from the incorporation of the "essential functions" standard applicable to discrimination cases.' " (Conc. & dis. opn. of Chin, J., *post*, at p. 218.) But the "essential functions" standard that, according to Justice Chin, makes the Legislature's intent " 'apparent,' " does not appear anywhere in the CFRA or its federal counterpart, the FMLA; it appears only in an administrative regulation. Because neither the Legislature in the CFRA nor Congress in the FMLA expressly incorporated that standard, it sheds little light on their intent.

Justice Chin's concurring and dissenting opinion also asserts that an employee claiming to suffer from a serious health condition may not seek medical leave while "successfully performing the essential functions of an *identical* job for a similar employer, on a part-time basis." (Conc. & dis. opn. of Chin, J., *post*, at p. 217.) But plaintiff's part-time job for Kaiser was not *identical* to her job at defendant's Roseville hospital, even though the two jobs were similar: The latter job required longer hours and (plaintiff alleges) more stressful working conditions. The significance, if any, of those differences *is* a disputed issue of fact to be decided at trial. The opinion also asserts that "the CFRA 'was not intended to shift the balance of power to a capable but unwilling employee.' " (*Id.* at p. 218.) But here plaintiff denies that she was *capable but unwilling*; rather, she claims she was *incapable but willing*, a matter for the trier of fact to decide.

who is successfully performing an identical job is obviously quite able to perform that job's function. The lead opinion's statutory interpretation encourages employees to take advantage of a system that was intended to assist them in difficult times, and ignores the needs of employers and fellow employees who participate in the system.

I agree with the Court of Appeal that the CFRA was intended to balance the demands of the workplace with the needs of the employee. As that court observed, the CFRA "was not intended to shift the balance of power to a capable but unwilling employee. That is apparent from the incorporation of the 'essential functions' standard applicable to discrimination cases. Under this standard, an employee who is able to perform the essential functions of his or her position is not entitled to medical leave regardless of the assertion of a selective disability."

The CFRA applies to companies with 50 or more employees and allows up to 12 weeks of unpaid "family care and medical leave" if "an employee's own serious health condition . . . makes the employee unable to perform the functions of the position of that employee." (Gov. Code, § 12945.2, subd. (c)(3)(C).) Under the applicable regulations, a "serious health condition" is defined as a physical *or* mental condition that involves continuing treatment by a health care provider. (Cal. Code Regs., tit. 2, § 7297.0, subd. (*o*).) As the Court of Appeal also observed, the Department of Fair Employment and Housing has provided that an employee who suffers from a "serious health condition" under the statute is one who is either "unable to work at all or unable to perform any one or more of the essential functions of the position of that employee." (Cal. Code Regs., tit. 2, § 7297.0, subd. (k).) The regulation specifies that it uses the term "essential functions" as that term is defined under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), which states: " 'Essential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires. 'Essential functions' does not include the marginal functions of the position." (Gov. Code, § 12926, subd. (f).)

The Court of Appeal observed that under the statute, the "essential functions" formulation in subdivision (f) of section 12926 of the Government Code "was adopted in the statutory scheme that prohibits employment discrimination against persons with disabilities. ([Gov. Code,] § 12940, subd. (a).) . . . [¶] The obvious purpose of the 'essential functions' formulation is to prevent an employer from discriminating by adopting an expansive definition of the duties of the job." As the Court of Appeal aptly noted, "[t]he words 'unable to perform the functions of the position of that employee,' [citation], are words of restriction, not expansion. The standard requires that an employee be unable to perform, rather than merely limited or inhibited; and it

requires that the inability relate to the essential functions of the job. (Cal. Code Regs., tit. 2, § 7297.0, subd. (k).)" As the court emphasized, the "essential functions" standard "can only have been adopted to prevent employees from abusing the right to medical leave by asserting some broad, amorphous, and perhaps subjective need or desire for leave." Indeed, "[h]ad the Legislature intended to confer an expansive right to medical leave, it could have used language far more conducive to such a goal."

The Court of Appeal correctly understood that the CFRA's requirement that an employer must grant the leave request of an employee whose serious health condition makes the employee "unable to perform the functions of the position of that employee," refers to the "essential job functions" generally. (Gov. Code, § 12945.2, subd. (c)(3)(C).) The CFRA does not contemplate that an employee with an alleged "serious health condition" would remain employed and receive health insurance benefits under a group health plan from one employer while on medical leave, at the same time that the employee is apparently working in a comparable position for a different employer. The lead opinion's belief that the CFRA did not intend to refer to the general functions of the job is simply unpersuasive in light of the legislative intent and common understanding of that term.

Indeed, the legislative history shows that the Legislature implicitly contemplated that an employee who requested leave due to a serious health condition would not be able to perform similar job duties while on medical leave. This is especially apparent in several documents found in the legislative history that explain the application of the CFRA amendments to the existing law. (Stats. 1993, ch. 827, p. 4466.) The CFRA permits employers' "requests for 2nd and 3rd opinions regarding the validity of the certification with respect to the employee's own serious health condition." (Legis. Counsel's Dig., Assem. Bill No. 1460 (1993–1994 Reg. Sess.) 5 Stats. 1993, Summary Dig., p. 339.) In addition, the CFRA "permit[s] an employer, as a condition of an employee's return from leave taken because of the employee's own serious health condition, to require the employee to obtain certification from his or her health care provider that the employee is able to resume work." (Legis. Counsel's Dig., Assem. Bill No. 1460 (1993–1994 Reg. Sess.) as amended in Sen. Aug. 19, 1993.)

The legislative history also indicates the CFRA did not consider that an employee would take leave from one job in order to work at a second job while also taking the employer's benefits from the first job. For example, the CFRA "require[s] an employer, during any period that an eligible employee takes family care and medical leave, or takes leave that qualifies as leave under the FMLA, to maintain and pay for the employee's medical coverage under a group health plan, as specified." (Legis. Counsel's Dig., Assem. Bill

No. 1460 (1993–1994 Reg. Sess.) 5 Stats. 1993, Summary Dig., p. 339; see Dept. of Fair Employment & Housing, Enrolled Bill Rep. on Assem. Bill No. 1460 (1993–1994 Reg. Sess.) Aug. 26, 1993, p. 1.) The CFRA also expands coverage to the employee's own illness and permits the employee to use accrued sick leave for her illness. (Assem. Com. on Ways & Means, Rep. on Assem. Bill No. 1460 (1993–1994 Reg. Sess.) as amended May 3, 1993, p. 1.) Clearly, the legislation contemplates that the employee who is on leave is incapacitated to the extent that she cannot work a second substantially identical job.

The lead opinion relies on one case it claims supports plaintiff's position, but in fact the case is not persuasive. (See *Stekloff v. St. John's Mercy Health Systems* (8th Cir. 2000) 218 F.3d 858.) In discussing the "serious health condition" requirement, *Stekloff* simply noted that whether the employee could perform the functions of the same job for another employer was not material to her request for medical leave under the federal Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et seq.; FMLA), an act that closely parallels the CFRA. (*Stekloff, supra,* at pp. 861–862.) *Stekloff* focused the inquiry on the employee's current job with the current employer and that whether the employee could perform the same job for another employer was immaterial to the employee's FMLA eligibility. (218 F.3d at p. 862.) As the Court of Appeal observed, *Stekloff* provided no reasoning for its conclusion, and chose to improperly shift the balance of the FMLA in the employee's favor without statutory support.

The lead opinion also misuses a comment made in the employment law practice guide that I co-authored, which cited to *Stekloff* and *Hurlbert v. St. Mary's Health Care System, Inc.* (11th Cir. 2006) 439 F.3d 1286, 1295–1296, another federal case that adopts the *Stekloff* holding. (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2006) Leaves of Absence, ¶ 12:266, p. 12-28 (rev. # 1, 2006).) The practice guide simply cites *Stekloff* and *Hurlbert* as cases interpreting application of comparable provisions in the FMLA. A general observation in a practice guide as to the state of the law in other jurisdictions is not persuasive authority in this case.

The words of the CFRA and the legislative history support the view that the Legislature did not intend an employee to be able to take advantage of the medical leave policy in order to further her own employment goals. As amici curiae Employers Group and the California Employment Law Council recognize, in order to maintain the statute's balance between the needs of employers and employees, and to serve the statute's purpose to promote stable workplace relationships, common sense dictates that an employee is not entitled to leave under the CFRA and to continuing benefits and job preservation with one employer while she demonstrates she is fully capable

of performing a job with the same "essential functions" for a second employer. The Court of Appeal correctly observed that the evidence is undisputed, as plaintiff testified in her deposition, "that she did not have a problem with work and thought she could have returned to work for [defendant] if it had changed the working conditions to suit her." Summary judgment on the issue was therefore proper. If the Legislature intends to permit employees to take identical second jobs while claiming a "serious health condition" at the expense of employers, it can specifically so state. In the meantime, we should not penalize employers that follow the law and assist their employees who are in serious need of medical leave.

Baxter, J., and Corrigan, J., concurred.

**MORENO, J.,** Concurring and Dissenting.—I agree with part IV of the lead opinion. The fact that plaintiff held a part-time job at a different workplace performing similar duties while on medical leave is not conclusive evidence that she was able to perform the full-time job for which she had taken leave. I disagree, however, with part III of that opinion. I would hold that under the Moore-Brown-Roberti Family Rights Act (CFRA) (Gov. Code, § 12945.2),[1] an employer who fails to obtain a second or third opinion as to an employee's medical condition is bound by the opinion of the employee's health care provider, assuming that opinion contains the information required by the statute.

To understand why this is the case, I first review the pertinent statutory scheme. As the lead opinion explains, the CFRA is patterned after the federal Family and Medical Leave Act of 1993 (FMLA). (29 U.S.C. §§ 2601–2654.) The CFRA allows an employee, under certain circumstances, up to 12 weeks of unpaid "family care and medical leave" for family needs such as the birth or adoption of a child, serious illness of a family member, or when "an employee's own serious health condition . . . makes the employee unable to perform the functions of the position of that employee." (§ 12945.2, subd. (c)(3)(C).) The CFRA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves either of the following: [¶] (A) Inpatient care in a hospital, hospice, or residential health care facility. [¶] (B) Continuing treatment or continuing supervision by a health care provider." (§ 12945.2, subd. (c)(8).)

Under the CFRA, if an employee requests medical leave, an employer may require an employee seeking medical leave to submit a certification by the employee's health care provider, which "*shall be sufficient* if it includes all of

---

[1] All statutory references are to this code unless otherwise indicated.

the following: [¶] (A) The date on which the serious health condition commenced. [¶] (B) The probable duration of the condition. [¶] (C) A statement that, due to the serious health condition, the employee is unable to perform the function [*sic*] of his or her position." (§ 12945.2, subd. (k)(1), italics added.) State regulations make clear that employers may not ask for additional information from the employee. (Cal. Code Regs., tit. 2, § 7297.4, subd. (b)(2)(A)(1).) The regulations further provide that an employer "shall respond to the leave request as soon as practicable and in any event no later than ten calendar days after receiving the request." (*Id.*, § 7297.4, subd. (a)(6).)

What the statute means when it says that the employee's certification "shall be sufficient" can be fairly implied from the context of the entire statute. An employee whose certification is "sufficient" is entitled to medical leave, except under the statutorily defined circumstances discussed below. As the court stated in *Sims v. Alameda-Contra Costa Transit Dist.* (N.D.Cal. 1998) 2 F.Supp.2d 1253, 1262 (*Sims*): "the certification procedures . . . are the exclusive means for an employer to challenge the medical facts underlying the employee's certification. Although the regulations explicitly permit an employer to deny leave to an employee who fails to produce 'a requested medical certification,' 29 C.F.R. § 825.312(b), there is no explicit authority for an employer to deny leave to an employee who does produce medical certification. To the contrary, Congress stated that if an employee's medical certification meets certain requirements, it 'shall be sufficient.' 29 U.S.C. § 2613(b)."

The statute does not make the employee's certified medical opinion the last word. The employer "may" seek a second opinion "[i]n any case in which [it] has reason to doubt the validity of the certification" (§ 12945.2, subd. (k)(3)(A)), and a third, binding opinion if the first two disagree (*id.*, subd. (k)(3)(C), (D).) These opinions are similarly limited to the facts covered in the original certified opinion. (§ 12945.2, subd. (k)(3)(A), (C); see *Sims, supra,* 2 F.Supp.2d at p. 1262.) The third health care provider is to be designated or approved jointly by the employer and the employee. (§ 12945.2, subd. (k)(3)(C).) Thus, "upon the submission of a sufficient medical certification, an employee is entitled to 'FMLA protection unless and until there is contrary medical evidence.' " (*Miller v. AT & T* (S.D. W.Va. 1999) 60 F.Supp.2d 574, 580.)[2]

---

[2] The lead opinion contends that the placement in subdivision (k)(1) of section 12945.2 of the provision that the certification "shall be sufficient" if certain information is provided somehow weakens my position. I disagree. Viewed in terms of the overall structure and purpose of the statute, there is nothing surprising in how the Legislature drafted this part of the statute. The statute simply spells out clearly what the employee must do to obtain medical leave and what the employer must do to refuse medical leave. At each point the employer has

In sum, the statute and accompanying regulations detail the circumstances in which, and the procedures by which, an employer may deny an employee medical leave. The statute allows the employer to deny such leave (1) if the employee fails to provide sufficient certification as set forth in the statute or (2) if a second and third medical opinion conclude that the employee has no serious health condition that would prevent him or her from working. (§ 12945.2, subd. (k)(3).) If an employer doubts an employee's serious health condition, it cannot compel the employee's medical provider to provide more information about the condition. Rather, the statute mandates that the employer seek a second and third opinion and prescribes how the health care provider rendering the third, binding opinion is to be selected.

The lead opinion reads ambiguity into a fairly clear statute and determines that an employer may simply ignore the procedures set forth in section 12945.2 and deny a validly certified medical leave without obtaining a second or third opinion. To arrive at this conclusion, it relies a great deal on the use of the word "may" in the statute: "Here, the pertinent statutory language does *not* require an employer faced with two conflicting health care provider opinions to obtain a binding decision from a third health care provider, and it does *not* say that an employer who fails to obtain such a decision will be barred, in litigation with the employee, from claiming that the employee did not suffer from a serious health condition making the employee unable to work. What the statutory language denotes is a legislative intent to offer the employer a choice of obtaining or not obtaining a binding decision from a third health care provider, if there is a difference of opinion between plaintiff's health care provider and the one designated by the employer. Subdivision (k)(3)(C) of section 12945.2 simply states that an employer *may* resort to that remedy. (See § 14 [' "Shall" is mandatory and "may" is permissive.'].)" (Lead opn., *ante*, at p. 210.)

The lead opinion's reliance on the use of the word "may" is misplaced. It would make little sense for the government to *require* an employer who has reason to doubt an employee's certification to obtain a second or third opinion. An employer who doubts the employee may still wish to give the employee the benefit of the doubt. Or the employer may satisfy its doubts in the employee's favor by means other than obtaining a second medical opinion. Or the cost and trouble of obtaining a second or third opinion may

---

a choice. When the employee requests leave, the employer can ask for certification. If the employee provides sufficient certification and the employer is still unsatisfied, it can request a second opinion and, if favorable, a third opinion. Although the Legislature could have drafted the statute differently, it is sufficiently clear. The lead opinion's alternative explanation of the "shall be sufficient" language—that it is intended simply to limit the information the employee is required to provide—makes little sense. Why take such care to limit the information necessary to certify the need for medical leave if the employer is then free to simply ignore the certification process and deny the leave?

not be worth it for the employer, for example, when the employee is asking for very little time off. The use of "may" merely means that the decision about whether to seek a second and third opinion is up to the employer. But "may" does not tell us the consequences of an employer's decision not to seek a second or third opinion. Those consequences are set forth elsewhere in the statute—namely, that an employee's certification "shall be sufficient" to authorize medical leave if it contains the required information from a bona fide health care provider and if it is not challenged by a second and third opinion, as discussed above. (§ 12945.2, subd. (k)(1).)

Moreover, what is left unsaid in the statute is at least as pertinent as what is said. If the statute were intended to function as the majority of this court says it does, one would expect it to spell out how the process is supposed to work if the employer elects not to seek a second or binding third opinion. But the statutory or regulatory provision that states, "Notwithstanding sufficient employee certification, and the lack of a favorable second or third opinion, an employer may deny medical leave if it has good reason to doubt that the employee has a serious health condition" is conspicuous by its absence. After going into detail about what an employee must do to obtain certification of a serious health condition and what an employer can do to contest it, one would think Congress or the Legislature would have at least mentioned that the employer could essentially ignore the certification and the second/third opinion remedies and refuse the medical leave request. That no mention is made of this option must be attributed not to faulty legislation but to the fact that Congress and the Legislature never intended it.

Why would Congress or the Legislature make the dispute-resolution procedure optional? The lead opinion responds that the procedure is primarily for the benefit of the employer, a safe harbor to ensure the employer's immunity from subsequent litigation. (See lead opn., *ante,* at p. 211.) But that supposition finds no support in either the language or history of the statute. The purpose of the FMLA, and presumably the CFRA is, among other things, to rectify the "inadequate job protection for . . . employees who have serious health conditions that temporarily prevent them from working." (Presidential Signing Statement, Feb. 5, 1993, 29 Presidential Documents 145.) In other words, the statute was intended to free employees from having to make a choice between keeping their jobs or taking care of their health. Unlike other employment decisions, such as decisions about promotion, transfers, and the imposition of discipline, which can be contested through internal grievance procedures or subsequent litigation, the decision about whether to grant medical leave due to a serious health condition is generally extremely time sensitive. The statutory procedure and accompanying regulations allow employees to have the decision made quickly, and to assure employees that if their medical claims are valid, they will be able to take medical leave with the peace of mind of knowing that the employer must lawfully give them

back their jobs. Otherwise, if the second and third opinions go against them, they will know they have no legal right to the leave. Ensuring that the employee is expeditiously provided with a decision on the leave based on the opinion of a neutral health care provider rather than of the employer, which may be biased by economic considerations, is completely in accord with the remedial purpose of the statute. On the other hand, the majority's interpretation—that the procedure is optional and essentially for the purpose of giving employers the opportunity to immunize their leave denial from litigation—does not promote any stated purpose of the CFRA or the FMLA.

Thus, the dispute-resolution procedure furthers the statute's purpose—job security for those who take bona fide medical leave—while allowing employers to ferret out bogus medical leave requests. The contrary position—that after the employee has done everything asked of her to certify the seriousness of her medical condition, the employer can still refuse her leave without consulting an independent medical opinion—encourages litigation and job insecurity, and leaves a hole of uncertainty in the middle of a statute that seems designed to inform employers and employees clearly of their rights and obligations. The employee with a serious medical condition who is terminated for taking medical leave would then have to engage in a costly suit to get her job back, in the course of which she would have to litigate the seriousness of her medical condition at the time she took the leave, sometimes long after that condition had ceased. (See *Sims, supra,* 2 F.Supp.2d at p. 1261.) Or she would have to sacrifice her health for the sake of job security. There is no reason to believe Congress or the Legislature intended either of these results. Rather, all indications are that Congress and the Legislature regarded the question of whether an employee had a serious health condition warranting up to three months' unpaid medical leave to be primarily a medical question, to be settled by doctors at the time the leave is requested, not by judges or juries years later.

Of course, an employer may have all sorts of reasons to doubt the validity of an employee's medical certification—the employee may have a history of poor credibility, or may have been seen performing activities that indicate his or her ability to perform the employment tasks, or may have been rumored to have told another employee that the certification was fraudulent. But the CFRA speaks directly to these situations. The dispute-resolution mechanism is not to be invoked routinely, but specifically "[i]n any case in which the employer has *reason to doubt* the validity of the [employee's] certification." (§ 12945.2, subd. (k)(3)(A), italics added.) The statute expressly contemplates that an employer may, for nonmedical reasons, entertain doubts about an employee's certification, but makes clear that those doubts ultimately must be confirmed through second and third medical opinions.

Behind the lead opinion's reading of the statute appears to be an assumption that a legislative requirement that disputes about medical leave be settled only through an alternative dispute-resolution procedure, rather than through litigation, is "such a dramatic step" (lead opn., *ante*, p. 211) that the Legislature must explicitly state that it means to bar such litigation. That assumption might be correct if the CFRA were similar in form and content to other statutes in which such litigation was clearly authorized, or if barring subsequent litigation would be contrary to the evident purpose of the CFRA, or if such a bar were contrary to some well-established public policy. (Cf. *Reno v. Baird* (1998) 18 Cal.4th 640, 653 [76 Cal.Rptr.2d 499, 957 P.2d 1333].) But none of these is true. The CFRA is a unique statute that uses the opinions of health care providers to resolve disputes about whether an employee should be given medical leave. Moreover, as discussed, the "dramatic step" of barring employers from circumventing the prescribed procedures is wholly consistent with the purpose of CFRA—to make it relatively easy for employees with bona fide serious health conditions to obtain medical leave, while at the same time allowing employers to contest questionable medical claims at the time they are made. Nor is a legislative mandate to use an alternative dispute-resolution procedure to make the process of determining medical leave eligibility simpler and less costly for employees and employers alike contrary to any public policy. Thus, I find the lead opinion's unspoken assumption unfounded that limiting the resolution of disputes about an employee's medical leave eligibility to the doctor's office rather than the courtroom is so anomalous that we must require the Legislature to do so explicitly rather than, as here, by clear implication.

Turning to the present case, as the lead opinion recounts, defendant employer Sutter Health Central sought a second medical opinion to test plaintiff Antonina Lonicki's medical certification, but did not seek a third binding opinion. I would therefore hold that the employer is estopped from contesting in subsequent litigation that plaintiff had a serious health condition.

Amici curiae Employers Group and the California Employment Law Council would distinguish *Sims, supra*, 2 F.Supp.2d 1253, and its progeny because in the present case, unlike in *Sims*, the employer had "contemporaneous, irrefutable evidence" that affirmatively invalidated the employee's medical certification—that the employee was in fact performing the same job for another employer when he or she sought medical leave. But whether or not there is a "contemporaneous, irrefutable evidence" exception to the requirement that the employer either accept the employee's sufficient certification or obtain a second and third opinion, part IV of the lead opinion makes clear that the exception does not apply in the present case. That opinion rightly concludes that plaintiff's part-time employment in a different job setting is

not irrefutable evidence that she was medically disabled from performing full time her job with defendant.

Although the CFRA is reasonably clear in requiring that employers who doubt an employee's certification obtain a favorable second and third medical opinion before denying the employee medical leave, it is obviously not clear enough. I would urge the Legislature to further clarify its intention in this regard.