Filed 7/26/16  Powe-Brown v. Kaiser Found. Hospitals CA1/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JANET D. POWE-BROWN,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>KAISER FOUNDATION HOSPITALS et al.,<br><br>     Defendants and Respondents. | A143681<br><br>(Alameda County<br>Super. Ct. No. RG11594627) |

Plaintiff Janet D. Powe-Brown filed this action against her current employer, Kaiser Foundation Hospitals (Kaiser), as well as her supervisors Veronica Ciaccio, Christopher Lomboy, and Kathy McCrarey, claiming defendants had unlawfully discriminated against her because of her race and disability, and had engaged in other wrongful employment practices.  Plaintiff asserted a total of 14 causes of action, all of which were resolved against her after the trial court granted defendants' motions for summary judgment.  On appeal, she asserts she raised triable issues of fact on her claims and therefore summary judgment was granted in error.  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.     *Factual Background*[1]

Plaintiff, an African-American, has been employed as a staff nurse by Kaiser since 1993. Plaintiff advanced from Staff Nurse III to the highest nurse level—Staff Nurse IV—on July 1, 2008, and has retained this status since that time.

Plaintiff voluntarily transferred from Kaiser's Oakland facility to Kaiser's Antioch facility in October 2007, and continues to work there. When she first transferred to Antioch, she was a Staff Nurse III in the operating room. She reported to McCrarey, who reported to Lomboy. McCrarey was eventually replaced by Ciaccio.

On June 3, 2008, Lomboy received an e-mail message from another staff nurse complaining that plaintiff showed a persistently negative attitude and had refused to communicate with certain staff members. Reportedly, her behavior was having a negative impact on the entire department. In her declaration in opposition to defendants' summary judgment motion, plaintiff denied these allegations.

Plaintiff received a performance evaluation in March 2009. The evaluation stated that she needed improvement in the area of cooperation and teamwork. Specifically, it noted she needed to improve on her communication with coworkers to avoid communication breakdowns. It also noted that she sometimes displayed uncooperative behavior when working as part of a group or a multi-disciplinary team. For example, plaintiff had reportedly been counseled regarding her refusal to take meal breaks in a timely manner, a situation that negatively impacted her coworkers. Additionally, she did not always comply with instructions or management direction. She was also rated as needing improvement with respect to giving and receiving constructive feedback. Overall, however, the review found that she was meeting expectations.[2]

On February 5, 2010, plaintiff attended a meeting during which she received a verbal warning regarding her behavior and attitudes towards management and staff. The

---

[1] As we explain below, plaintiff has waived any challenge to the trial court's many evidentiary rulings. We omit evidence found by the trial court to be inadmissible.

[2] Plaintiff received a substantially similar performance evaluation in March 2010.

2

problems noted were similar to the ones mentioned in the March 2009 performance review.

At some point, plaintiff filed a "corporate compliance complaint," alleging she was being subjected to constant unfair treatment, harassment, and accusations that were made against her without investigation. In her opening brief, plaintiff asserts she was held to an unfair standard of conduct because defendants "perceived her to be the stereotypical 'angry Black woman.' " At her deposition, however, plaintiff could not recall if Lomboy had ever made any racially derogatory comments in her presence, nor had she received any e-mail messages from him containing any racially derogatory or offensive content. Additionally, no one had ever told her that they heard Lomboy make such statements. She also testified that McCrarey had never said anything racially derogatory or offensive in her presence, though McCrarey had yelled at her more than once.

Plaintiff filed Equal Opportunity Employment Commission (EEOC) charges on September 7, 2010, alleging discrimination and retaliation based on race.

On September 9, 2010, plaintiff was observed as having fallen asleep in the operating room. At the time, she was supposed to have been "shadowing" one of the surgical nurses. At her deposition, she stated that she did not recall sleeping, but acknowledged she was accused of having done so by persons who were in the operating room with her. She conceded she might have fallen asleep, even though she did not remember doing so. In January 2011, she received a one-day suspension for this incident. At her deposition she said she had no idea whether the suspension was racially motivated.

On February 2, 2011, plaintiff suffered a cerebral aneurysm. She took a six-month medical leave of absence and returned to work part-time in August 2011. She resumed her full duties as an operating room nurse in December 2011.

Plaintiff filed another EEOC charging document on April 1, 2011.

### A. *The Action Is Commenced*

On September 8, 2011, plaintiff filed a complaint against defendants. The complaint contains 14 causes of action: (1) racial discrimination, (2) harassment, (3) hostile work environment, (4) retaliation (two causes of action), (5) disability discrimination, (6) violation of Labor Code section 1102.5, (7) violation of public policy, (8) violation of article 1, section 8 of the California Constitution, (9) constructive termination in violation of public policy, (10) intentional infliction of emotional distress, (11) failure to accommodate, (12) failure to engage in interactive process, and (13) defamation.

On May 9, 2014, Kaiser moved for summary judgment, or summary adjudication in the alternative, as to 13 of the 14 claims.[3] Kaiser argued, in part, that plaintiff lacked substantial evidence to show its actions were a pretext for discrimination or retaliation. It also asserted there was no evidence that she was ever subjected to an adverse employment action. Plaintiff opposed the motion, arguing she had repeatedly been subjected to adverse actions, and asserting there were triable issues of fact as to her claims of pretext.

On June 20, 2014, the individual defendants also moved for summary judgment.

On September 8, 2014, after sustaining numerous objections to plaintiff's evidence submitted in opposition, the trial court ruled in defendants' favor on the motions for summary judgment. The court struck declarations containing "me too" allegations from several of plaintiff's coworkers, as well as much of the evidence contained in plaintiff's own 25-page declaration. The court then found Kaiser's evidence showed its actions were based on legitimate, nondiscriminatory considerations, and concluded plaintiff had not produced any evidence of pretext. Accordingly, the court granted the motion for summary judgment for Kaiser on these claims, as well as on the claims brought against the individual defendants. This appeal followed.

---

[3] The claim for defamation was brought against the individual defendants only.

## DISCUSSION

### I. *Standard of Review*

A summary judgment motion may be granted only if there is no triable issue of material fact and the party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment has the burden of presenting evidence that negates an element of plaintiff's claim. Or a defendant may show that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to support an element of the claim. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) If the defendant makes this showing, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).) We review de novo the trial court's grant of summary judgment. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039; *Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206 (*Lonicki*).) Our Supreme Court has stated, "[A]ny doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535; accord *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874.)

### II. *Plaintiff Failed to Challenge Evidentiary Rulings on Appeal*

Before addressing whether the trial court properly granted summary judgment in favor of defendants, we must determine what portion of plaintiff's proffered evidence may be considered on appeal. In reviewing the trial court's summary judgment ruling, we generally consider all evidence set forth in the moving and opposing papers *except* those matters as to which objections were made and sustained. (Code Civ. Proc., § 437c, subd. (c); *Lonicki, supra,* 43 Cal.4th at p. 206.) In addition, a party who fails to "attack the [trial court's evidentiary] rulings on appeal . . . forfeit[s] any contentions of error regarding them." (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41; see also *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014–1015 [party forfeits "any issues concerning the correctness of the trial court's evidentiary rulings" by failing to "challenge the trial court's ruling sustaining . . . objections to certain evidence offered

5

in opposition to the summary judgment motion"].)  Accordingly, where an appellant does not challenge a trial court's evidentiary rulings excluding certain evidence on a motion for summary judgment, "we exclude this evidence from our review of the summary judgment motion." (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1181.)

Rather than address the trial court's evidentiary rulings, which we have described above, plaintiff sidesteps them and relies on much of the excluded evidence in her opening brief.  While she claims the court abused its discretion by "ignoring" the "me too" evidence contained in her coworkers' declarations, her opening brief does not contain a coherent legal analysis addressing the reasons why the court deemed this evidence to be inadmissible.[4]  She does not address any specific objections, nor does she explain why the trial court abused its discretion in sustaining them.  We therefore consider the evidence to have been properly excluded and it cannot serve as a basis for review on appeal.  (*Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1196; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1113–1114.)  Accordingly, we predicate our analysis of the summary judgment ruling on the evidence admitted in the trial court and disregard plaintiff's many references to the evidence to which defendants' objections were sustained.

### III.    Legal Framework

While plaintiff asserted multiple causes of action in her compliant, the thrust of her lawsuit is founded on employment discrimination.  In an employment discrimination

---

[4] While plaintiff attempts to contest the trial court's evidentiary rulings in her reply brief, she forfeited any challenge by failing to raise it in her opening brief. " ' "Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief.  To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission.  Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before. . . ." ' " (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115.)  Plaintiff has not offered any justification for her failure to address this point in her opening brief.

case, the employer, as the party seeking summary judgment, has the initial burden to present admissible evidence showing either that one or more elements of the plaintiff's prima facie case is lacking or that an adverse employment action was based upon legitimate, nondiscriminatory factors. (Code Civ. Proc., § 437c, subd. (p); *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203 (*Caldwell*).) In meeting its initial burden the employer need not demonstrate that the plaintiff cannot prove a prima facie case if the employer can set forth admissible evidence of its reasons, unrelated to unlawful discrimination, for the adverse employment action. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 357.) If the employer meets its initial burden in this manner, the plaintiff then has the burden to produce "substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.)

The plaintiff must do more than raise the inference that the employer's asserted reason is false. "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (*St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 515; *Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.) If the plaintiff fails to produce evidence from which a reasonable fact finder could infer that the employer's true reason was discriminatory, the employer is entitled to summary judgment. (*Caldwell, supra,* 41 Cal.App.4th at p. 203.)

## IV.   *Adverse Employment Action*

Defendants assert the trial court correctly found that plaintiff could not establish a prima facie case of discrimination because she failed to show that the actions she complained of qualify as "adverse employment actions" under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

"[T]o be actionable, an employer's adverse conduct must materially affect the terms and conditions of employment." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1051, fn. 9 (*Yanowitz*).) "[T]he determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." (*Id.* at p. 1052.) "[T]he phrase 'terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide." (*Id*. at p. 1054.)

The protections against discrimination in the workplace therefore are "not limited to adverse employment actions that impose an economic detriment or inflict a tangible psychological injury upon an employee." (*Yanowitz*, *supra*, 36 Cal.4th at p. 1052.) Rather, FEHA "protects an employee against unlawful discrimination with respect . . . to . . . the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." (*Id.* at pp. 1053–1054.) "[T]here is no requirement that an employer's retaliatory acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries." (*Id.* at p. 1055.) Thus, "it is appropriate to consider plaintiff's allegations collectively under a totality-of-the-circumstances approach." (*Id*. at p. 1052, fn. 11.)

In *Yanowitz,* the court found the plaintiff had suffered adverse employment activity where "[m]onths of unwarranted and public criticism of a previously honored employee, an implied threat of termination, contacts with subordinates that only could have the effect of undermining [the] manager's effectiveness, and new regulation of the manner in which the manager oversaw her territory did more than inconvenience [the plaintiff]. Such actions, which for purposes of this discussion we must assume were unjustified and were meant to punish [the plaintiff] . . . , placed her career in jeopardy. Indeed, [the manager] so much as told [her] that unless there were immediate changes, her career . . . was over. Actions that threaten to derail an employee's career are objectively adverse . . . ." (*Yanowitz, supra,* 36 Cal.4th at p. 1060.)

While it is true that plaintiff was not fired or demoted, she did receive a one-day suspension following the sleeping incident in the operating room. Additionally, critical assessments of certain aspects of her job performance were placed in her personnel file. Viewing the evidence in a light most favorable to plaintiff, we conclude she sufficiently demonstrated that she suffered adverse employment actions.

## V. *There Are No Triable Issues of Fact as to Discrimination or Retaliation*

In her complaint, plaintiff alleged that defendants' actions were motivated by discriminatory animus against African Americans.[5] We conclude defendants presented substantial admissible evidence to show their actions were based on legitimate reasons unrelated to plaintiff's race.

For example, on one occasion plaintiff had refused to follow Ciaccio's directions to transport a patient from the emergency room to the operating room for an urgent medical procedure. The sleeping incident described earlier in this opinion occurred about four months later, leading to plaintiff's one-day suspension. Additionally, Kaiser presented evidence showing plaintiff at times failed to cooperate with her coworkers and supervisors, an issue that Kaiser attempted to address in her performance evaluations. We conclude defendants produced legitimate reasons for the adverse employment actions alleged by plaintiff. This shifted the burden back to plaintiff to show a triable issue of fact on whether Kaiser's articulated reasons were untrue and pretextual.

Plaintiff relies on *Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740, a pregnancy discrimination case brought under the FEHA. The plaintiff in *Johnson* introduced "me too" declarations provided by employees who worked for the same employer. (*Id.* at p. 744.) The Court of Appeal held that the declarations constituted substantial evidence requiring reversal of judgment. (*Id.* at p. 745.) Plaintiff asserts that, as in *Johnson,* "[t]he disputed material facts offered by plaintiff in her declaration coupled with the declarations provided by her co-workers,

---

[5] We address plaintiff's claim of disability discrimination below.

9

constitute substantial evidence that created triable issues of fact sufficient to defeat KAISER's motion for summary judgment/summary adjudication." Not so.

Preliminarily, as defendants correctly observe, plaintiff has waived her argument because her opening brief entirely fails to address the evidence defendants submitted in support of their motions for summary judgment. In fact, her opening brief's statement of facts essentially mirrors the declaration she filed below in opposition to defendants' motions. Where, as here, the substantial evidence test applies, "[a]n appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and *waives* the contention that the evidence is insufficient to support the judgment." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408, italics added.) Plaintiff's decision to rely exclusively on her own declaration and the "me too" declarations of her coworkers in her opening brief operates as a waiver of any challenge based on claimed insufficiency of the evidence.

Additionally, as we have already noted above, plaintiff failed to acknowledge in her opening brief that almost all of her coworker's declarations, and substantial portions of her own declaration, were deemed inadmissible by the trial court. She also failed to provide any reasoned argument or authority for the proposition that the court erred in sustaining defendants' evidentiary objections to these declarations. Instead, she mischaracterizes the court's actions: "The trial court did not consider the ["me too"] declarations in its ruling on any of the four MSJs; the declarations were introduced by plaintiff but the documents were either discounted at best or completely ignored at worst." After excising the inadmissible content that she relies upon in her brief, we are left with only plaintiff's subjective, conclusory allegations as to defendants' alleged discriminatory and retaliatory motives. This is not enough to create a triable material issue of fact.

We further note that we are not obliged to cull the record for plaintiff's benefit in order to attempt to uncover the requisite triable issues. While our review is de novo, as with an appeal from any judgment it is the appellant's responsibility to discharge his or her duty to affirmatively demonstrate error and therefore to point out to this court the

10

triable issues the appellant claims are present. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) "Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

We conclude that, because plaintiff did not submit substantial, admissible, and responsive evidence from which a trier of fact could have found Kaiser's articulated reason for its disciplinary actions was merely a pretextual smokescreen to obscure that the actual reasons were based on plaintiff's race, the trial court correctly granted defendants' motions for summary judgment on her claims alleging racial discrimination. Our conclusion disposes of all of plaintiff's race-based causes of action.

## VI. The Trial Court Properly Granted Summary Judgment As To The Remaining Claims

### A. Disability Discrimination

Plaintiff's sixth cause of action appears to be based on discrimination and retaliation to which she was allegedly subjected after she went on disability leave following her cerebral aneurysm. The trial court found plaintiff had "not submitted evidence in this case to support her claim that she suffered from a disability or that [Kaiser] subjected her to an adverse employment action because of her disability. . . . Although Plaintiff missed approximately 6 months of work in 2011 due to a cerebral aneurysm, she was ultimately able to return to work with restrictions in August 2011, and without restrictions in December 2011. Plaintiff was returned to her position as Registered Staff Nurse IV."

In challenging this ruling, plaintiff fails to discuss the legal standards for determining whether she had a disability and whether Kaiser failed to accommodate her disability or engage in an interactive process. In fact, in her opening brief she fails to cite to any legal authority at all in support of her claim of error. We conclude plaintiff has forfeited her argument by failing to provide legal analysis regarding the trial court's alleged errors and by failing to cite legal authority. (*Los Angeles Unified School Dist. v. Casasola* (2010) 187 Cal.App.4th 189, 212 [failure to provide legal argument forfeits

11

issue on appeal]; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [if a point does not include legal analysis, the court may pass it as waived]; Cal. Rules of Court, rule 8.204(a)(1)(B) [support points with argument and legal authority].) For the same reason, her related claims for failure to accommodate and failure to engage in interactive process also fail.

### B. Other Causes of Action

Plaintiff's arguments with respect to her causes of action for violation of Labor Code section 1102.5 and violation of public policy are based on the same arguments that she makes in support of her claim for retaliation under the FEHA. As discussed above, she failed to demonstrate that issues of material fact exist on whether defendant's actions were a pretext for retaliation. Thus, summary judgment was properly granted as to these causes of action.

The trial court also granted summary judgment on plaintiff's causes of action for violation of article I, section 8 of the California Constitution, constructive termination, and intentional infliction of emotional distress, on the ground that she failed to oppose defendants' motions on these claims. On appeal, plaintiff merely asserts that she did, in fact, refute defendants' evidence and offer rebuttal evidence below. She fails, however, to cite to any legal authority pertaining to these causes of action. We again deem the arguments waived.

Finally, because we have concluded summary judgment was proper as to all of plaintiff's causes of action, we need not address her argument that the trial court erred in striking her claim for punitive damages.

**DISPOSITION**

The judgments are affirmed.

12

_____
DONDERO, J.

We concur:


_____
MARGULIES, Acting P.J.


_____
BANKE, J.